**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 92-8274

UNITED STATES of AMERICA,

Appellee-Plaintiff,

VERSUS

JOHNNY CARL MICHELLETTI,

Appellant-Defendant.

Appeal from the United States District Court
For the Western District of Texas

(May 10, 1993)

Before REYNALDO G. GARZA, WILLIAMS and JONES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Appellant, Johnny Carl Michelletti, appeals the denial of his motion for suppression of evidence. Michelletti entered into a plea agreement expressly reserving the right to challenge his motion's denial. The appellant pled guilty to the unlawful possession of a firearm by a convicted felon. Upon careful review, we find that the denial of the motion was proper and we therefore affirm.

FACTS

On November 17, 1991, El Paso Police Officer George Perry and his partner were on routine motor patrol in a high crime area at

around 2:00 a.m.  As they were driving, Perry observed a man walking in front of Alacran's Bar.  When the man saw the patrol car, he turned and ran behind the bar.  The officers decided to investigate and drove the car around the bar from the other direction.  Officer Perry saw a group of three men standing there, including the man the police originally spotted and who was now out of breath.  Perry left his car and quickly scanned the subjects' hands for weapons.  At this instant a man pushed open the back exit door and had an open beer can in his left hand while keeping his right hand in his pants pocket.  The officer testified that this man, Johnny Carl Michelletti, seemed to have a cocky attitude and he stared right at the policeman.  He then attempted to walk past the officer.  Perry stated that he stopped the subject because he was violating the law by leaving a bar with alcohol.  He was suspicious that some other criminal activity might be taking place because the initial subject had run from the police and joined the group of men at such a late hour in this crime ridden part of town. The officer was particularly wary of Michelletti, who is six foot two and weighs 220 pounds and kept his right hand in his pocket when joining the suspicious trio.  The appellant was told to put the beer on the patrol car and put both his hands on the vehicle. A quick frisk uncovered a .22 caliber pistol in the right hand pants pocket that had originally drawn the officer's attention. The appellant had been convicted of aggravated assault in 1989. Michelletti pled guilty to the unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. 922(g)(1).  He

2

specifically reserved the right to appeal the denial of his motion to suppress the evidence of the pistol. He was sentenced to 33 months imprisonment, three years supervised release and a $50 assessment. Michelletti timely appealed.

### ANALYSIS

The appellant argues that Officer Perry had no basis to detain or frisk him and therefore the discovered concealed pistol should not have been admitted into evidence. We disagree. An officer may stop and search an individual if he has reasonable suspicion that criminal activity is afoot and the suspect might be armed. Terry v. Ohio, 392 U.S. 1, 29-30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "We are unwilling to tie the hands of police officers operating in potentially dangerous situations by precluding them from taking reasonable steps to ensure their safety when they have legitimately detained an individual." United States v. Rideau, 969 F.2d 1572, 1575 (5th Cir. 1992).

Officer Perry had several reasons to be suspicious of the appellant. The time was around 2:00 a.m., closing time for bars. The officers were on routine patrol in a high crime area when they observed a man turn and run away from them at Alacran's Bar. This first subject immediately went behind the bar and joined his two friends presumably to announce the policemen's arrival. Suspicions were already aroused by this evasive individual joining these other men when he was obviously apprehensive about the police presence. When the policeman approached the group, Michelletti suddenly pushes open the back door of the bar and approaches. He is holding

3

an open beer can in his left hand while keeping his right hand in his front pants' pocket. The appellant weighs 220 pounds and is six foot, two inches tall. This imposing figure could cause a lot of harm if he did have a weapon. The officer appreciated the risk involved if indeed there was some criminal intent on the part of the four men. The officer also surmised, in the alternative, that the three men and the police might be in danger if the appellant had ill intent and was actually armed. The fact that he kept his right hand in his pocket at all times, given the surrounding circumstances, was reason enough to suspect Michelletti of possibly being armed and warranted the pat down frisk for the officers' and, possibly, the bystanders' safety. The appellant had a bit of a cocky attitude, stared at the officer and then attempted to walk past him. Michelletti did not have any intention of setting the beer down or pouring it out. The officer knew that if the bar had a mixed beverage permit, as most bars do, that it was a violation to remove any alcoholic beverage from the premises under the Tex. Alco. Bev. Code Ann. § 28.10.[1] If in the alternative, the establishment had an off premises license, it would be a violation under §§ 71.01[2] or 101.72[3]. The record is silent as to which

---

[1] § 28.10 provides in relevant part:
Consumption Restricted to Premises
. . . . .
(b) A mixed beverage permittee may not permit any person to take any alcoholic beverage purchased on the licensed premises from the premises where sold. . . .

[2] § 71.01 Authorized Activities.
The holder of a retail dealer's off-premise license may sell beer in lawful containers to consumers, but not for resale and not to be opened or consumed on or near

4

license the bar carried.  The officer also did not know whether the beer was illegally sold after 2:00 a.m., in violation of § 105.05.[4] The officer had a definite duty to uphold the Code under § 101.07.[5] It is clear that the officer had a good faith reason to believe that a violation had taken place and therefore had the authority to stop the appellant aside from the suspicions generated by the surrounding events and Michelletti's concealed hand.

Given the appellants' attitude, stare and the placement of his right hand while he cavalierly carried a beer out of a bar in violation of Texas Law were grounds for suspicion.  When you combine these reasons with the time at night, the high crime area, the suspicious actions of the three men, the officer had sufficient

---

the              premises where sold.

[3]  § 101.72 states in relevant part:
Consumption of Alcoholic Beverage on Premises Licensed for Off-Premises Consumption
     (a) A person commits an offense if the person knowingly consumes liquor or beer on the premises of a holder of a wine     and beer retailer's off-premise permit or a retail dealer's     off-premise license.

[4]  § 105.05   states in relevant part:
Hours of Sale: Beer
     (a) No person may sell, offer for sale, or deliver beer at      any time not permitted by this section.
               .   .   .   .   .
     (c) In a county having a population of 300,000 or more, according to the last preceding federal census, a holder of a retail dealer's on-premise late hours license may also sell,     offer for sale, and deliver beer between midnight and 2 a.m.      on any day.

[5]  § 101.07  Duty of Peace Officers
     All peace officers in the state, including those of cities, counties, and state, shall enforce the provisions of this code and cooperate with and assist the commission in detecting violations and apprehending offenders.

reasonable suspicion that he might be in danger and that Michelletti was possibly armed. The police did not know if they were in a situation involving four hostile suspects or only one possibly armed suspect giving the officer the added responsibility of protecting the civilians. Michelletti was properly frisked because he kept his hand where a weapon could and actually was concealed. The danger these officers were facing is underscored in the testimony given that a fellow officer and friend was shot to death in El Paso only two weeks prior.

We view the evidence with all inferences in favor of the verdict. United States v. Martinez, 975 F.2d 159, 161 (5th Cir. 1992), cert. denied, (1993). Findings of fact can be challenged only for clear error. United States v. Richardson, 943 F.2d 547, 549 (5th Cir. 1991). We do not find any reversible error here.

## CONCLUSION

We find that Officer Perry had reasonable suspicion to stop and frisk the appellant. The fruit of that frisk, the concealed pistol, was therefore properly admitted into evidence. For all the above reasons, we
AFFIRM.


JERRE S. WILLIAMS, Circuit Judge, dissenting:


The district court determined that Officer Perry's stop and frisk of Johnny Michelletti was justified, and it refused to

6

suppress the handgun found in Michelletti's pocket.  The majority affirms the district court's decision.  Because I do not find a sufficient reasonable suspicion to justify the frisk, I respectfully dissent.

There is no significant dispute about the facts.  Because we are reviewing the district court's legal conclusion that Perry had sufficient reasonable suspicion to justify the stop and frisk, the *de novo* standard applies.  United States v. Richardson, 943 F.2d 547, 549 (5th Cir. 1991).

In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court outlined an exception to the rule requiring probable cause to detain and search an individual.  Under Terry, an officer may briefly detain someone if he or she has reasonable suspicion that the person has been, or is about to be, involved in some criminal activity.  An officer then may also frisk the detainee for weapons if the officer is "justified in believing that the individual . . . is armed and presently dangerous to the officer or to others."  Id. at 24, 88 S.Ct. at 1881.  Thus, the suspicion that justifies a Terry stop does not also sanction a lawful patdown search unless the officers also reasonably suspect that the detainee is armed and dangerous. The majority's opinion improperly treats these two requirements as one.

7

1.  *the stop*

It is well established that an investigatory stop is proper only when the detaining officer has a reasonable suspicion "that criminal activity may be afoot." Id. at 30, 88 S.Ct. at 1884. In the instant case, however, the record is devoid of any evidence that Officer Perry was warranted in suspecting that Michelletti violated or attempted to violate any criminal laws.

The district court concluded that Michelletti violated section 101.72 of the Texas Alcoholic Beverage Code (TABC), which forbids the on-site consumption of beer purchased from a supplier licensed only for off-premises consumption.[6] But even this important point is manifestly unestablished. As the majority concedes, the record does not reveal whether Alacran's Bar carries the mixed-beverage permit that bars carry almost by definition. It is fanciful to imagine the converse, that a profit-seeking "bar" would hold merely an off-premise license and forbid on-site consumption. In short, only the implausible circumstance that Alacran's Bar carried an off-premise license would support an arrest of Michelletti for violating § 101.72, inferred from his possession of the open container.

Other than § 101.72, TABC's regulatory scheme generally governs the *purveyors* of alcoholic beverages, not the buyers. *See,*

---

[6] Even for a multiple offender, however, the penalties amount only to a fine between $100 and $200. Id. § 101.72(d).

*e.g.*, V.T.C.A., Alcoholic Beverage Code § 28.10(b) (prohibiting a mixed beverage permittee from allowing a patron to take a beverage off the premises), § 32.15 (barring the removal of alcoholic beverages from the premises of a private club), § 71.03 (forbidding an off-premise licensee from selling beer to be opened or consumed on or near the premises), and § 105.05(c) (prohibiting an on-premise purveyor from selling beer after 2:00 a.m.). The only other code provision that authorizes the arrest of a bar patron for possession of a beer outside a bar comes into play if the patron is consuming the beer after hours. Id. § 105.06. Perry, however, made no reference to the time when he stated that "it was a violation of Texas law to exit a bar in possession of alcoholic beverages." Additionally, the district court found that the stop took place at 2:00 a.m. Under § 105.06, no violation occurs until after 2:15 a.m.

The factually similar case of Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), is instructive. In Brown, a unanimous Supreme Court held that officers were unjustified in detaining the defendant as he was walking down an alley amid a "high drug problem area" merely because he "looked suspicious":

> The flaw in the State's case is that none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that he was involved in criminal conduct. Officer Venegas testified at appellant's trial that the situation in the alley "looked suspicious," but he was unable to point to any facts supporting that conclusion. [footnote omitted] . . . The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in

9

criminal conduct.

Id. at 52, 99 S.Ct. at 2641.


As in Brown, the record fails to establish that Michelletti's detention was warranted by Perry's asserted suspicion that Michelletti himself was engaged in criminal behavior. I am willing to concede, however, that Perry may have possessed a good faith, though inaccurate, belief that Michelletti's possession of the beer outside the bar was prohibited by TABC regulations. Additionally, TABC § 101.07 charges all Texas peace officers with "detecting violations and apprehending offenders." A brief stop of Michelletti could therefore be justified as part of an officer's investigation of whether Alacran's Bar was a mixed beverage establishment or private club that had allowed Michelletti to take his beer from the premises. Officer Perry, however, never claimed such a basis.


2. *the frisk*

Even assuming that, in light of all the circumstances, Perry had sufficient reasonable suspicion to conduct a valid Terry stop, I do not agree that he was justified in conducting the subsequent frisk. To determine the separate question of whether an officer was justified in frisking a detainee, we judge the facts against an objective standard: Would "a reasonably prudent man . . . believe, based on `specific and articulable facts,' that his safety or that of others [was] in danger"? United States v.

10

Rideau, 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc) (quoting Terry, 392 U.S. at 27, 88 S.Ct. at 1883).

The officer in Terry had watched three men for ten or twelve minutes. Two of those men had walked a dozen times past a particular store window, studying it and consulting with each other. When the officer stopped the men to ask their names and business, they mumbled inarticulately. He therefore frisked them and discovered two revolvers. The Supreme Court held that a reasonably prudent officer could justifiably suspect the men were casing the store and were armed for robbery. In Rideau, two officers patrolling a high-crime area at night saw Rideau standing in the middle of the road. After the officers flashed their lights, Rideau stumbled out of the road. The officers approached Rideau, suspecting public intoxication. When they asked him his name, Rideau appeared nervous and pulled away, prompting the frisk and discovery of a gun. This court placed particular emphasis on both Rideau's nervousness and backing away in holding that the officers were justified in suspecting he was armed and dangerous. Id. at 1575.

This court in Rideau emphasized that "the police [do not] have a right to frisk anyone on the street at night in a high crime neighborhood," and they must be able to point to "specific and articulable facts indicating that their safety is in danger to justify a patdown." Id. at 1575-76. Perry offered no specific and

11

articulable facts here.  Perry testified at the suppression hearing that Michelletti seemed suspicious because he had his right hand in his pocket; he drank beer with his left hand; he was calm, but "a little bit almost cocky"; and he made eye contact with the officers, but then looked away.  Perry further stated on cross-examination that neither Michelletti nor the other three men outside the bar did anything threatening.  The officer admitted that Michelletti's right hand in his pocket, his beer, and his attitude offered "[n]othing that would suggest he was armed at that time."

This concession is significant.  The conceded absence of "specific and articulable facts" is critical.  As the Supreme Court first cautioned in Terry, an officer's belief that a suspect is armed and dangerous cannot be based upon only a mere "inchoate and unparticularized suspicion or `hunch.'"  Terry, 392 U.S. at 21, 88 S.Ct. at 1883.  This important warning, not followed by the majority, was reiterated verbatim in the recent case of Maryland v. Buie, 494 U.S. 325, 332, 110 S.Ct. 1093, 1097, 20 L.Ed.2d 889 (1990).

Michelletti's response when the officers confronted him also provided no justification for the frisk.  Before asking any questions, Perry directed Michelletti to approach the patrol car, put down his beer, place his hands on the car, and submit to a patdown.  Michelletti complied without comment or resistance.

12

Unlike the situation in Terry, the officers here did not observe Michelletti acting suspiciously before accosting him. Unlike the officers in Terry and Rideau, Perry did not question Michelletti before conducting the frisk. Unlike the defendant in Rideau, Michelletti did not appear nervous, mumble, or draw away when confronted. He submitted to authority and did nothing that was potentially threatening. Neither was Rideau subjected to the intrusive frisk of being "put up against a wall or across a car and subjected to a shake down" as was Michelletti. Rideau, 969 F.2d at 1575-76. And unlike the officers in United States v. Wangler (987 F.2d 228, 231 (5th Cir. 1993) (per curiam)) who reasonably suspected the defendant was a drug dealer and had found guns near his truck on prior occasions, Perry did not detect a bulge in Michelletti's front pants pocket.

Courts suppress evidence seized in violation of Terry and its progeny, even in potentially hazardous encounters such as roadside and on-the-street confrontations. *See, e.g.*, United States v. Cole, 628 F.2d 897, 899 (5th Cir. 1980), cert. denied, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981) (suppressing the discovery of a pistol following patdown search because there was no proof that the suspect might be armed and dangerous); United States v. McQuagge, 787 F. Supp. 637, 653 (E.D. Tex. 1991) (suppressing physical evidence, including firearms, where "there is no evidence in the record . . . that the law enforcement officers who made the arrest reasonably believed the defendants were dangerous when they

13

were stopped"); <u>Harris v. State</u>, 827 S.W.2d 49 (Tex. App.—Houston [1st Dist.] 1992, review denied) (suppressing crack cocaine because the frisking officer relied upon unparticularized hunches, not an articulated and individualized suspicion that the suspect was armed).

The United States Supreme Court has upheld the suppression of contraband discovered similarly during an unjustified patdown search in <u>Ybarra v. Illinois</u>, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In <u>Ybarra</u>, officers had a warrant to search a bar and its bartender for heroin. The officers also conducted a patdown search of Ybarra, a bar patron, despite the fact that Ybarra had made no gestures suggesting criminal conduct, no attempts to conceal contraband, and no suspicious statements. The Court held that the patdown of Ybarra was invalid because "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." 444 U.S. at 91, 100 S.Ct. at 342 (citing <u>Sibron v. State of New York</u>, 392 U.S. 40, 62-63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968)).

Certainly the late hour, the high-crime area, and the presence of other individuals outside the rear door of the bar justified the officers being on their guard. And viewed in a generous light, Officer Perry apparently possessed a good faith belief that Texas law had been violated, thus warranting further investigation.

14

Michelletti's behavior, however, did nothing to raise the reasonable suspicion that he was armed and dangerous. While it is true that the patdown revealed a weapon, this impermissible search cannot be justified on hindsight. Accordingly, I disagree with the majority's conclusion, and I would vacate the conviction.