IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 91-1800

Summary Calendar

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee
Cross-Appellant,

versus

LARRY DALE WANGLER,

Defendant-Appellant
Cross-Appellee.

———————————

Appeals from the United States District Court
for the Northern District of Texas

———————————

(March 18, 1993)

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges.

PER CURIAM:

I.

Police stopped Larry Dale Wangler in his car suspecting that he was carrying cocaine. Noticing a bulge in his front pocket, an officer frisked him and found a .22 caliber revolver. The police then arrested Wangler for carrying a concealed weapon and conducted an inventory search of his car. The search uncovered a firearm silencer, a quarter pound of cocaine, and documents evidencing drug trafficking.

Wangler was indicted on three counts: (1) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a);

(2) unlawfully using and carrying a firearm during and in relation to a drug trafficking crime contrary to 18 U.S.C. § 924(c)(1); and (3) possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). Wangler moved to suppress this evidence. The district court denied the motion after a hearing. Wangler pleaded guilty to Count 2, reserving his right to appeal the motion to suppress. The district court sentenced Wangler to 60 months in prison, a three-year term of supervised release, and a mandatory assessment of $50.00.

Wangler appeals, arguing that the evidence was seized in violation of the Fourth Amendment and that the court lacked authority to sentence him to a term of supervised release. We affirm.

## II.

The testimony at the hearing on the motion to suppress showed the following. In February 1990, the Navarro County Sheriff's Department raided a pit bulldog fight at the residence of Larry Meador. Officers arrested 47 people. During the raid, several people fled. The deputies found five guns and some narcotics abandoned on the ground. Two of the guns were within 30 feet of a Dodge Ram Charger registered to Wangler's wife.

One month after the raid, the Sheriff's Department received information from a confidential informant that Wangler was delivering substantial amounts of cocaine to Larry Meador in Navarro County on a regular stop. This informant had provided information about other criminal activities involving other

individuals in the past, and the information was independently verified. The Sheriff's Department had received information from numerous sources over the last four years that Larry Meador was in the drug business. For the next two months, the informant continued to give information about Wangler, Meador, and others.

In the meantime, a second confidential informant began to tell deputies about Wangler's drug activities. This informant was an independent source, and like the first informant, had provided reliable information in the past that lead to the arrest and prosecution of other individuals. The second informant stated that Wangler was making a regular stop at Meador's house, and this informant provided information as to when Wangler was in possession of cocaine and when he was collecting money.

On October 22, 1990, Deputy Spencer received a telephone call from the second confidential informant and was told that Wangler was currently in route to Larry's One-Stop, a convenience store operated by Meador, with a load of cocaine. The informant further stated that Wangler would be driving a 1987 Dodge pickup, Texas 313-5LL. After Spencer alerted other deputies and asked their assistance, he drove to Larry's One-Stop.

When he arrived and parked at a nearby vacant station, he observed Wangler pumping gas into the Dodge pickup. Moments later, a Toyota pickup arrived. Spencer could not see who was driving the Toyota, but he believed it to be Meador's truck, based on his knowledge of the type of car Meador drove.[1] Wangler walked up to

---

[1]In fact, the driver was Josh Meador, Larry Meador's nephew.

the Toyota and spoke briefly to the driver, then walked back to his truck and drove away.

Spencer followed in his unmarked car with other officers close behind. Spencer believed that Wangler still had the cocaine and hoped to follow Wangler to the drop point. The deputies saw Wangler exit highway 31 onto I-45, then take the first exit after traveling only about a mile and reenter I-45 in the opposite direction. To Spencer, Wangler appeared to be making a "heat run," an attempt to determine whether anyone was following him. At this point, the deputies decided to stop Wangler.

After pulling him over, Spencer asked Wangler to get out and go to the back of the pickup. Spencer twice asked for Wangler's consent to search his truck, and Wangler refused both requests. Sergeant Mike Cox then walked up and observed what appeared to him to be a bulge in Wangler's right front pants pocket. Cox asked Spencer if he had patted Wangler down. When Spencer said he had not, Cox patted the bulge and felt a hard object. He then reached into Wangler's pocket and pulled out the .22 caliber revolver. After arresting Wangler, the officers performed an inventory search of the car and discovered, among other things, the cocaine.

### III.

Wangler argues that both the stop and the frisk were illegal.

An investigatory stop is proper if based on reasonable suspicion "that criminal activity is afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). "Reasonable suspicion" is considerably less than that which is required to show probable cause. United States

4

v. Rideau, 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc).  To satisfy the Fourth Amendment, there must be some "minimal level of objective justification for the officer's actions, measured in light of the totality of the circumstances."  Id. (citing United States v. Sokolow, 490 U.S. 1, 6-8 (1989)).  Moreover, reasonable suspicion need not be based only on personal observation.  If based on other information, the question becomes whether that information possesses "an indicia of reliability." Adams v. Williams, 407 U.S. 143, 147 (1972).

We find that the information the deputies relied on possessed sufficient indicia of reliability and gave them reasonable suspicion that Wangler was carrying drugs.  Authorities first suspected Wangler was involved in drugs after the raid at Meador's residence.  Thereafter, deputies received information that Wangler was dealing drugs from two unconnected informants and over an extended period of time.  Finally, Deputy Spencer learned from the second informant, through the October 22 phone call, that Wangler was going to Larry's One-Stop to deliver cocaine.  This tip was substantially corroborated by Spencer's observations.  Wangler arrived at the convenience store, in the car described, and met with someone in a Toyota pickup Spencer believed to be owned by Meador.  Although the information was not correct in every detail, it was reasonable for the deputies to suspect that Wangler had cocaine in his truck after he left the store.

Once an individual is lawfully stopped, the police may conduct a limited protective search for concealed weapons if they

5

justifiably believe the individual is armed and presently dangerous. <u>Terry</u>, 392 U.S. at 24; <u>Williams</u>, 407 U.S. at 146. The question is whether a reasonably prudent officer could believe, based on "specific and articulable facts," that his safety or that of others is in danger. <u>Terry</u>, 392 U.S. at 27; <u>Rideau</u>, 969 F.2d at 1574. We have emphasized that the standard is an objective one and "[t]he officer's state of mind, or his stated justification for his actions, is not the focus of our inquiry." <u>Rideau</u>, 969 F.2d at 1574; <u>see also</u> <u>Maryland v. Macon</u>, 472 U.S. 463, 470-71 (1985); <u>United States v. Causey</u>, 834 F.2d 1179, 1184 (5th Cir. 1987) (en banc). "We must attempt to put ourselves in the shoes of a reasonable police officer as he or she approaches a given situation and assesses the likelihood of danger in a particular context." <u>Rideau</u>, 969 F.2d at 1574.

Sgt. Cox had reason to believe that Wangler was a drug dealer. In Sgt. Cox's experience, drug dealers routinely carry weapons. Cox also knew of the guns found near Wangler's truck at the dog fight raid. In this context, a reasonable officer would have been justified in believing that the bulge in Wangler's pocket could have been a gun. Wangler argues that Cox did not in fact believe that the bulge was a gun and therefore did not subjectively believe that he or the other officers were in danger.[2] However, as stated,

---

[2]When asked at the suppression hearing what he thought the bulge was, Cox answered:

> I assumed -- you know, when I saw the bulge, you know, I didn't think whether it was narcotics or what, or whether it was -- might have been a weapon of some kind, so I patted his pocket down -- and asked Sergeant Spencer if he had done

the inquiry is an objective one, and a reasonable officer in Cox's position was justified in patting down Wangler.

                                    IV.

Wangler argues that because § 924(c)(1) does not authorize a period of supervised release none may be imposed.  We had rendered conflicting decisions on this point.  Compare United States v. Allison, 953 F.2d 870, 875 (5th Cir. 1992) (holding that supervised release is not allowed under § 924) with United States v. Van Nymegen, 910 F.2d 164, 165-67 (5th Cir. 1990) (holding that supervised release may be imposed pursuant to 18 U.S.C. § 3583 despite a lack of authorization in the statute setting forth the offense).  We have now resolved this conflict in favor of the earlier precedent.  United States v. Langston, No. 92-1528 (5th Cir. Feb. 19, 1993) (unpublished opinion).  Wangler's contention is therefore foreclosed.

AFFIRMED.

---

that and when he said no, I said, well, there may be something in his pocket and felt a very hard feeling object which, you know, could have been narcotics or something very soft.  It was something very firm so that's why I reached in his pocket and pulled and felt it and recognized when I saw it to be a pistol.