**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 93-8201

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

EDUARDO SANCHEZ TELLEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Western District of Texas

_____

(December 30, 1993)

Before REAVLEY and DAVIS, Circuit Judges, and ROSENTHAL,[1] District
Judge.

DAVIS, Circuit Judge:

Eduardo Sanchez Tellez appeals his convictions and sentence on
possession of firearms by a convicted felon.  We remand for
dismissal of one of the counts and for amendment of the sentence.

I.

In October 1991, at noon, Anthony Detective Arturo Montoya
received information from another police officer that a parole
violator, with whom he was familiar, was driving a black 4 X 4
pickup truck with large tires and a chrome roll bar with attached
lights.  Thirty minutes later, Detective Montoya saw a truck
exactly matching this description at a gas station.  The driver of

_____

[1] District Judge of the Southern District of Texas, sitting
by designation.

the truck was not the known parole violator, but Detective Montoya could not identify the passengers he saw in the truck. Detective Montoya called for back up, and two other units joined him in stopping the truck as it left the gas station.

Detective Montoya went to the passenger side of the truck, opened the door and ordered Tellez, the passenger nearest the passenger door, to get out of the truck so that Montoya could see the middle passenger. When Tellez did not respond, Montoya reached in and pulled him out. As he pulled Tellez out, Montoya spotted the barrels of two guns projecting from underneath the passenger seat on the floorboard. Another detective who assisted in the stop recognized Tellez as a convicted felon.

Tellez was charged with two counts, one for each firearm, of being a felon in possession of a firearm in violation of 18 U.S.C. § 922 (g)(1). Defendant filed a motion to suppress the firearms arguing that neither the stop of the truck nor the seizure of his person was supported by probable cause or reasonable suspicion and that therefore the firearms seized thereafter should have been suppressed as "fruits of the poisonous tree." The government and Tellez agreed to carry the motion to suppress to trial. A jury trial was held in January 1993, and the jury found Tellez guilty on both counts. The court heard arguments on the motion to suppress and found that the officers had probable cause to stop the truck and to order Tellez out of the truck to see if the middle passenger was the parole violator.

The district court sentenced Tellez to concurrent terms of 36 months' imprisonment and three years supervised release on each

count of possession of firearms, and imposed a mandatory special assessment of $100. In this appeal, Tellez primarily challenges the district court's denial of his motion to suppress. He also contends that the two-count indictment charging simultaneous possession of two weapons violates the double jeopardy clause.

II.

On appeal from denial of a motion to suppress, this court reviews the district court's factual findings under the clearly erroneous standard, and the district court's conclusions of law **de novo**. **United States v. Richardson**, 943 F.2d 547, 549 (5th Cir. 1991). We must review the evidence in the light most favorable to the government as the prevailing party. **See United States v. Simmons**, 918 F.2d 476, 479 (5th Cir. 1990). The district court's ruling to deny the suppression motion should be upheld, "if there is any reasonable view of the evidence to support it." **United States v. Register**, 931 F.2d 308, 312 (5th Cir. 1991)(citations omitted).

Tellez contends that Detective Montoya had no legal basis to stop the truck nor to seize him, and therefore the rifles, which were discovered as a result of the stop and seizure, should not have been admitted into evidence. We address these contentions in turn.

An officer may conduct a brief investigatory stop of a vehicle and its occupants, without probable cause, based solely on the "reasonable suspicion" that the person is engaged, or about to be engaged in criminal activity. **Terry v. Ohio**, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1879-80 (1968); **United States v. Garcia**, 942 F.2d 873,

3

876 (5th Cir. 1991), **cert. denied**, 112 S.Ct. 989 (1992). "Reasonable suspicion" is considerably easier for the government to establish than probable cause. **United States v. Wangler**, 987 F.2d 228, 230 (5th Cir. 1993). The prosecution must demonstrate a "minimal level of objective justification for the officer's actions, measured in light of the totality of the circumstances." **Id.** In addition, reasonable suspicion need not be based merely on personal observation. **Id.** If based on other information, the question becomes whether that information possessed an "indicia of reliability." **Id.**

Montoya acted on the basis of an outstanding warrant for the arrest of a known parole violator who had been seen in a truck that was remarkably similar to the truck in which Tellez was a passenger. Tellez argues, nonetheless, that the stop of the truck was not justified under **Terry** for two reasons: 1) the police did not have the make, license plate number or year of the vehicle, and 2) the police knew the parole violator was not driving this truck and had been driving when seen thirty minutes earlier.

The police need not have every identifying characteristic of a wanted vehicle to make a valid **Terry** stop. **See United States v. Harrison**, 918 F.2d 469 (5th Cir. 1990) (officer who was aware that an airplane might have brought illegal drugs to rural airstrip at night made valid **Terry** stop of a pickup truck in the area driving without lights soon after airplane left); **United States v. Rose**, 731 F.2d 1337 (8th Cir.), **cert. denied**, 469 U.S. 931, 105 S.Ct. 326 (1984) (**Terry** stop valid when police were told that bank robbers might be in yellow Camaro driven by Black female and stopped

4

vehicle matching this description).  The description given here, a black 4 X 4 pickup truck with large tires and a chrome roll bar with attached lights, was sufficiently specific to justify the stop.

Also, the fact that the parole violator was not driving this truck did not preclude a valid **Terry** stop.  Thirty minutes had passed since the parole violator was seen, and he could have easily switched places with one of the passengers.  The district court did not err in concluding that Montoya and the other police officers made a valid **Terry** stop.  They had reasonable suspicion sufficient to briefly stop the truck to determine whether a known parole violator  who was the subject of an arrest warrant was a passenger in the truck.[2]

Tellez next challenges the legality of his seizure.  He argues that even if the police officers made a valid **Terry** stop of the truck, they violated his Fourth Amendment rights by pulling him out of the truck when they knew he was not the known parole violator.

However, the district court found that Montoya ordered Tellez out of the truck to confirm or deny his suspicion that the middle passenger was the parole violator.  This finding is not clearly erroneous.  Under **Terry**, the police can generally order a suspect out of a car after a routine traffic stop.  **Pennsylvania v. Mimms**, 434 U.S. 106, 98 S.Ct. 330 (1977); **see also**, **United States v. Shabazz**, 993 F.2d 431 (5th Cir. 1993) (ordering someone out of a car is constitutionally permissible when done incident to a lawful

_____

[2]  Because the stop and search was permissible under **Terry**, we need not decide if the officers had probable cause to stop the truck.

traffic stop); **United States v. Hardnett**, 804 F.2d 353 (6th Cir. 1986), **cert. denied**, 479 U.S. 1097, 107 S.Ct. 1318 (1987) (police conducting valid **Terry** stop are permitted to order occupants out of vehicle).

Furthermore, an officer's use of some force does not necessarily cause an encounter to exceed the scope of **Terry**. **United States v. Sanders**, 994 F.2d 200 (5th Cir.), **cert. denied**, 114 S.Ct. 408 (1993). The officer has some latitude in formulating a plan and executing it under these circumstances. As we observed in **Sanders**:

> When Officer Hambrick arrived on the scene at Cruz's Grocery, he had only a matter of seconds to assess the situation, formulate a plan of action, and implement it. In so doing, he had to balance several competing priorities: to investigate the alleged crime and make any appropriate arrests; to prevent the commission of any additional crime; not to infringe on the rights of [the defendant] or any other persons who might be affected by the officer's actions or inactions; to ensure the safety of others of the general population present or nearby; and to go home in one piece at the end of his shift.

**Id.** at 207.

The reasonableness of the stop and the force used must, therefore, turn on the particular facts of each case. Montoya and the other officers knew that they were entering a potentially dangerous situation by stopping a truck with three passengers, one of whom they believed to be a parole violator. We cannot quarrel with the officer's decision not to go to the front of the truck and look through the truck's windshield to identify the middle passenger. This would have forced the officers to place themselves in a much more vulnerable position than simply requiring the passengers to get out of the vehicle where the officers could

screen the occupants for weapons and guard themselves against attack. As the Supreme Court pointed out in **Terry**, it would certainly "be unreasonable to require that police officers take unnecessary risks in the performance of their duties." 392 U.S. at 23.

In order to safely determine if the parole violator was in the truck, it was reasonably necessary to remove Tellez. When he did not voluntarily exit the vehicle upon request, it was reasonable for Montoya to remain in a position of relative safety and remove him so that he could identify the middle passenger.

The district court did not err in denying Tellez's motion to suppress. Once Detective Montoya's fellow officer identified Tellez as a convicted felon, the officers had probable cause to arrest Tellez for his possession of the firearms. The officers were then authorized to seize the weapons incident to the arrest.

### III.

Tellez also contends that the indictment charging him with two counts under 18 U.S.C. § 922(g)(1) for the simultaneous possession of two firearms violates the Double Jeopardy Clause. He argues that this section is based on the status of the offender and not on the number of guns possessed. The government does not dispute this contention.

Although his two sentences were ordered to run concurrently, Tellez was required to pay two $50 special assessments, one on each count of possessing a firearm. This case is on all fours with **United States v. Berry**, 977 F.2d 915, 920 (5th Cir. 1992). We therefore remand this case to the district court so the government

7

can dismiss one of the counts of conviction and the district court can amend its sentence.

REMANDED.