Enrique RUVALCABA, Plaintiff–Appellant,

v.

CITY OF LOS ANGELES; Darryl Gates, Police Chief; John Schiffner; John Backus, et al., Defendants–Appellees.

No. 93–56609.

United States Court of Appeals, Ninth Circuit.

Submitted * May 1, 1995.

Decided Aug. 29, 1995.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

1324

John C. Burton, Burton & Norris, Pasadena, CA, for plaintiff-appellant.

Janet G. Bogigian, Office of the City Attorney, Los Angeles, CA, for defendants-appellees.

Before: BEEZER and TROTT, Circuit Judges, and BURNS, Senior District Judge.**

Opinion by Judge Beezer; Partial Concurrence and Partial Dissent by Judge Burns

BEEZER, Circuit Judge:

In *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam), the United States Supreme Court held that once a motor vehicle has been

** The Honorable James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation.

lawfully detained for a traffic violation, police officers may order the driver to get out of the vehicle without violating the Fourth Amendment. Today, we must decide whether to extend this holding to cover all passengers in a motor vehicle.

Enrique Ruvalcaba appeals the district court's denial of his motion for a judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, and his motion for a new trial pursuant to Federal Rule of Civil Procedure 59. He argues: (1) that police officers conducted an illegal seizure when they ordered him out of a vehicle in which he was a passenger; and (2) that the district court erred in permitting police officers to testify about their knowledge of Ruvalcaba's criminal history.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Because we are persuaded that the Supreme Court's holding in *Mimms* should be extended to passengers, we affirm.

## I

Los Angeles Police Officers John Backus and David Jacoby were on duty during the early morning hours of February 28, 1991 when they noticed a vehicle fail to stop at a stop sign.[1] The officers began to follow the vehicle, and Officer Backus recognized one of the three occupants as Enrique Ruvalcaba. Officer Backus was familiar with Ruvalcaba from a variety of prior contacts. Due to this familiarity, he anticipated the possibility of danger in stopping the vehicle.

When the officers activated their flashers, the driver of the vehicle turned onto a poorly lit side street and stopped. The officers approached the vehicle cautiously and directed the three occupants to step outside and walk over to the sidewalk. The driver, who turned out to be Enrique Ruvalcaba's brother, Victor, complied with the officers' direction as did another occupant of the vehicle, Salvador Haro.

Enrique Ruvalcaba did not cooperate. Instead, he jumped out of the vehicle and began swearing at the officers. Ruvalcaba then moved toward the officers in a threatening manner.[2] Officers Jacoby and Backus proceeded to subdue Ruvalcaba by using their batons. A violent struggle ensued, and Ruvalcaba suffered injuries.

Ruvalcaba filed a civil rights suit under 42 U.S.C. § 1983 against Officers Backus and Jacoby, Officer John Schiffner, the City of Los Angeles, and Police Chief Darryl F. Gates (collectively "City"), seeking money damages. The trial was bifurcated, and Ruvalcaba's suit against the individual officers proceeded to trial first. Ruvalcaba moved for judgment as a matter of law on grounds that the police officers illegally seized him when they directed that he exit the vehicle. The district court denied the motion.

The jury returned a verdict in favor of the officers. Ruvalcaba then moved for a new trial on grounds that the district court erred in permitting Officers Backus and Jacoby to testify about their knowledge of Ruvalcaba's criminal history. The district court denied this motion as well.

## II

■■■ We review de novo the district court's denial of a motion for judgment as a matter of law. *Erickson v. Pierce County,* 960 F.2d 801, 804 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 815, 121 L.Ed.2d 687 (1992). We review for abuse of discretion a district court's denial of a motion for a new trial. *Larson v. Neimi,* 9 F.3d 1397, 1398 (9th Cir.1993).

## III

Ruvalcaba first argues that the district court erred in denying his motion for judgment as a matter of law. He contends that the police officers violated his rights under the Fourth Amendment when they, without cause, ordered him to step out of the vehicle in which he was riding as a passenger. Because this seizure was illegal as a matter of law, Ruvalcaba argues, no reasonable juror

---

1. Because the jury returned a verdict in favor of the officers, we accept their version of the events that took place.

2. For the sake of clarity, Ruvalcaba will hereinafter refer to Enrique Ruvalcaba.

could have returned a verdict in favor of the officers.

At the outset, it is important to note what is not at issue in this case. Ruvalcaba does not contest on appeal the legality of the routine traffic stop. We therefore need not examine the reasons for which Officers Jacoby and Backus stopped the Ruvalcaba vehicle. Ruvalcaba also raises no challenge to the reasonableness of the police officers' use of force after he stepped out of the vehicle. As the jury has already done so, we need not pass judgment on those events. Finally, Ruvalcaba does not argue that the police officers conducted any unconstitutional pat-down search or frisk after he left the vehicle. The issue Ruvalcaba does raise directly is whether Officers Jacoby and Backus violated the Fourth Amendment when they ordered him to step out of the vehicle.

■ The Fourth and Fourteenth Amendments to the United States Constitution prohibit state officials from conducting unreasonable searches and seizures. *Vernonia Sch. Dist. v. Acton,* ——— U.S. ———, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). When a police officer stops an automobile and detains its occupants, that activity constitutes a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979).

■ Not all seizures, of course, violate the Fourth Amendment, only those that are unreasonable. *Vernonia,* ——— U.S. at ———, 115 S.Ct. at 2390; *see United States v. Barona,* 56 F.3d 1087, 1091–93 n. 1 (9th Cir.1995) ("Reasonableness, not probable cause, is undoubtedly the touchstone of the Fourth Amendment."). Reasonableness is measured by balancing the nature of the intrusion into an individual's Fourth Amendment interests against "the public interest" or "legitimate governmental interests" at stake. *Vernonia,* ——— U.S. at ———, 115 S.Ct. at 2390; *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975).

In determining the reasonableness of a police officer's order for an occupant to get out of a vehicle after a valid traffic stop, we do not write on a blank slate. In *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam), the Supreme Court confronted a similar case involving a police officer's traffic stop of a vehicle and its driver, the sole occupant. The Court framed the inquiry as whether "the order to get out of the car, issued after the driver was lawfully detained, was reasonable and thus permissible under the Fourth Amendment." *Id.* at 109, 98 S.Ct. at 332. To answer its question, the Court focused on "the incremental intrusion resulting from the request to get out of the car." *Id.*

The Court first examined the public interest. Initially, the Court made clear that the police officer had no reason to suspect "foul play" from the particular driver, "there having been nothing unusual or suspicious about his behavior." *Id.* Rather, the police officer's routine practice was to order all drivers out of their vehicles after traffic stops. The Court held nevertheless that the state's interest in protecting officer safety was "both legitimate and weighty" and that this interest was enhanced by the officer's practice. *Id.* at 110, 98 S.Ct. at 333. The Court recognized "the inordinate risk confronting an officer as he approaches a person seated in an automobile." *Id.*

Balanced against the state's interest, the Court weighed the intrusion into a driver's personal liberty of the order to step out of the vehicle after the vehicle had already been validly stopped for a traffic infraction. The Court concluded that the additional intrusion "can only be described as *de minimis.*" *Id.* at 111, 98 S.Ct. at 333. Later, the Court found additional ways to characterize the intrusion, including "hardly ris[ing] to the level of a 'petty indignity,'" and "a mere inconvenience." *Id.* (quoting *Terry v. Ohio,* 392 U.S. 1, 17, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968)).

The Court concluded that the public interest in officer safety prevailed, holding that a police officer as a routine practice may order the driver to step out of a lawfully detained motor vehicle.

■ Ruvalcaba contends that his situation is distinguishable from *Mimms* because he was a passenger in the vehicle, whereas

Mimms was the driver. Ruvalcaba argues that "passengers have done no wrong, violated no laws, and there is no basis to deprive them of their liberty." While we agree with Ruvalcaba that *Mimms* does not control the outcome, we believe that the reasoning behind *Mimms* is equally applicable to passengers in a vehicle as it is to drivers.[3]

The primary basis behind the legitimate and weighty governmental interest in *Mimms* was the danger to police officers when confronting a driver seated in an automobile. *See Adams v. Williams*, 407 U.S. 143, 148 n. 3, 92 S.Ct. 1921, 1924 n. 3, 32 L.Ed.2d 612 (1972) ("According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile."); *cf. Michigan v. Long*, 463 U.S. 1032, 1047, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983) ("[I]nvestigative detentions involving suspects in vehicles are especially fraught with danger to police officers."). That danger is equally grave when a police officer confronts passengers; indeed, it may be more dangerous to have the driver outside the vehicle while one or more other passengers are left inside. One or more passengers may be seated in the back seat of a car, or the back of a sport utility vehicle, making it difficult, if not impossible, for the officer to keep a close watch on these passengers. *See United States v. Salas*, 879 F.2d 530, 535 (9th Cir.), *cert. denied*, 493 U.S. 979, 110 S.Ct. 507, 107 L.Ed.2d 509 (1989) ("A weapon can be concealed under the seat of a vehicle. It is readily accessible to be used to harm any police officer who approaches an automobile...."). Having all occupants step out of the vehicle protects the safety of the officer

while the officer is dealing with the driver regarding the traffic violation. We believe that the governmental interest weighs strongly in favor of permitting a police officer to order all occupants out of a vehicle.

The intrusion into a passenger's liberty is minimal. The automobile has been stopped lawfully, and the passenger is, for the time being, going nowhere. As with the driver, "the only question is whether he shall spend that period sitting [in the car] or standing alongside it." *Mimms*, 434 U.S. at 111, 98 S.Ct. at 333. The passenger is not asked to expose any more of his person than is already exposed by virtue of being in the vehicle during the traffic stop. Of course, no additional intrusion into the passenger's liberty, such as a frisk or prolonged detention, may be justified by the traffic stop absent some additional suspicion. The mere order to exit the vehicle, however, is insignificant.

The balance of interests in this case weighs heavily in favor of police officers. In the area of police confrontations with occupants of legally stopped vehicles, wide deference is appropriately granted to the officers' need for protection, especially when the intrusion is so minimal. We hold that once a police officer has lawfully stopped a vehicle for a traffic violation, the officer may, consistent with the Fourth Amendment and despite the absence of probable cause or reasonable suspicion of criminal activity, order all occupants of the vehicle to step outside.

Although we recognize that the driver, not the passengers, was the cause of the traffic stop, that fact does not alter the balance of interests. The weighty interest in officer safety is not dependent on the danger from

---

**3.** We have previously noted cursorily that *Mimms* should be extended to apply to "[o]ccupants of a lawfully detained motor vehicle," but we did so without any balancing of interests of passengers. *See United States v. Wiga*, 662 F.2d 1325, 1332–33 (9th Cir.1981), *cert. denied*, 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982). *Wiga* is, of course, entirely consistent with the result we reach here.

Other circuits have extended *Mimms* to apply to passengers in a vehicle, most without significant analysis. *See United States v. Shabazz*, 993 F.2d 431, 437 n. 7 (5th Cir.1993); *United States v. Hardnett*, 804 F.2d 353, 358 (6th Cir.1986), *cert. denied*, 479 U.S. 1097, 107 S.Ct. 1318, 94

L.Ed.2d 171 (1987); *cf. United States v. Tellez*, 11 F.3d 530, 533 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1630, 128 L.Ed.2d 354 (1994); *United States v. Powell*, 929 F.2d 1190, 1195 (7th Cir.), *cert. denied*, 502 U.S. 981, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991).

Two state courts have reached the same conclusion, after conducting careful and well-reasoned balancing of the interests at stake for passengers. *Michigan v. Martinez*, 187 Mich.App. 160, 466 N.W.2d 380, 383–84 (1991), *appeal dismissed*, 439 Mich. 935, 480 N.W.2d 106 (1992); *Louisiana v. Landry*, 588 So.2d 345, 346–47 (La. 1991).

the driver as a result of being stopped for a traffic violation, it is dependent on the inherent danger from approaching seated people in a vehicle, whether driver or passenger. Justice Stevens, dissenting in *Mimms*, recognized this logic. *Mimms*, 434 U.S. at 122, 98 S.Ct. at 339 (Stevens, J., dissenting) ("Because the balance of convenience and danger is no different for passengers in stopped cars, the Court's logic necessarily encompasses the passenger.").

Because we conclude that it is reasonable under the Fourth Amendment for police officers to direct all occupants of a vehicle to step out of their vehicle following a valid traffic stop, the officers' conduct challenged on appeal in this case was *per se* reasonable. We need not address the City's argument that Officers Backus and Jacoby had compelling reasons in this case to order Ruvalcaba out of the vehicle. Indeed, the circumstances would have alarmed any officer: it was late at night, the Ruvalcaba car pulled onto a side street before stopping, and Officers Backus and Jacoby knew about some criminal history of at least one occupant. Whether, as in this case, police officers are confronted with multiple factors indicating danger, or whether the situation appears normal and benign, the Fourth Amendment permits this *de minimis* intrusion into a vehicle occupant's liberty.[4]

The district court properly denied Ruvalcaba's motion for judgment as a matter of law.

## IV

Ruvalcaba also argues that the district court erred in denying his motion for a new trial. He contends that Officers Backus and Jacoby were improperly permitted to testify about their knowledge of Ruvalcaba's criminal history. We disagree.

■ District courts are granted broad discretion in admitting evidence, and their rulings are reviewed only for an abuse of discretion. *United States v. Dunn*, 946 F.2d 615, 617 (9th Cir.), *cert. denied*, 502 U.S. 950, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991). A new trial is only warranted when an erroneous evidentiary ruling "substantially prejudiced" a party. *United States v. 99.66 Acres of Land*, 970 F.2d 651, 658 (9th Cir.1992).

■ The district court permitted the police officers to testify in a limited manner about their prior contacts with Ruvalcaba. This testimony was relevant to establish the facts and circumstances known to the officers during their confrontation with Ruvalcaba. In addressing an excessive force case under the Fourth Amendment, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).

Keeping in mind that this trial involved the officers' alleged use of excessive force during the entire confrontation with Ruvalcaba, we conclude that the district court properly allowed the officers to testify about the facts known to them regarding Enrique Ruvalcaba's criminal past. The district court also properly admonished the jury to consider Ruvalcaba's prior bad conduct only in determining whether the officers' actions were reasonable under the circumstances. There was no abuse of discretion in admitting this evidence.

Neither did the district court's admission of the evidence run afoul of Federal Rule of Evidence 403. The district court is accorded broad discretion in determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Borunda v. Richmond*, 885 F.2d 1384, 1388 (9th Cir.1988). The police officers' testimony was not so unfairly prejudicial as to warrant exclusion under Rule 403.

The district court did not abuse its discretion in denying Ruvalcaba's motion for a new trial.

AFFIRMED.

JAMES M. BURNS, Senior District Judge, concurring in part and dissenting in part:

Although I agree that the district court's denial of Ruvalcaba's motion for judgment as

---

4. Police officers are, of course, not required to take this protective step. We merely hold that such a routine practice is permissible under the Fourth Amendment.

a matter of law and motion for new trial was proper under the circumstances particular to this case, I do not concur with the majority's establishment of a bright-line rule that permits an officer to routinely order all occupants to exit a vehicle legally stopped for a traffic violation.

As the majority states, in *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the Supreme Court held that an officer may routinely ask the driver to exit a vehicle lawfully stopped for a traffic violation because the officer's safety is always a matter of concern under those circumstances. The *Mimms* Court weighed the public's interest in allowing an officer to take precautionary safety measures when he confronts a driver for a traffic violation against "the individual's right to personal security free from arbitrary interference by law officers." *Id.* at 109, 98 S.Ct. at 332. The Court concluded the officer's safety takes precedence under these circumstances because the additional intrusion is *de minimis* when an officer asks the driver, a person already lawfully detained because he violated a law, to exit a lawfully stopped vehicle.

The Court did not, however, generalize its holding to embrace all occupants of a vehicle. In fact, the Court's reasoning was geared directly and specifically to the inherent and potential risk arising from the interaction between an officer and a driver during a stop for a traffic violation:

(1) "[W]e ... recognize[ ] the inordinate risk confronting an officer as he approaches a person seated in an automobile." *Id.* at 110, 98 S.Ct. at 333.

(2) "Establishing a face-to-face confrontation diminishes the possibility, otherwise substantial, that the driver can make unobserved movements...." *Id.*

(3) "The hazard of accidental injury from passing traffic to an officer standing on the driver's side of the vehicle may also be appreciable in some situations." *Id.* at 111, 98 S.Ct. at 333.

(4) "Rather than conversing while standing exposed to moving traffic, the officer prudently may prefer to ask the driver of the vehicle to step out of the car and onto the shoulder of the road where the inquiry may be pursued with greater safety to both." *Id.*

The *Mimms* Court, in essence, concluded that an officer's safety is *per se* at risk during a traffic stop even though the driver's offense may be minor because of (1) the physical juxtaposition of officer, driver, car, and passing traffic; and (2) the confrontation that inevitably takes place between a driver and an officer during a traffic stop. These factors, however, may not necessarily exist in relation to other occupants of the vehicle; thus, the blanket balancing test the *Mimms* Court performed to establish a *per se* rule permitting an officer to routinely ask the driver to exit a vehicle lawfully stopped for a traffic violation may not fit well when "passenger" is substituted for "driver." A passenger, for example, may well be detained inadvertently and unavoidably during a routine stop for a traffic violation. Unlike the driver, who "owns" the unlawful conduct, the passenger may have done no more than unluckily place himself in the hands of a negligent driver. The passenger does not become an active participant in the stop unless criminal activity is suspected; thus, a passenger is not routinely approached nor confronted face-to-face by the officer. Also, the officer's exposure to "the hazard of accidental injury from passing traffic" during a traffic stop is not a risk associated with a passenger since traffic generally passes on the driver's side.

Just as the *Mimms* Court did not extend its *per se* rule to encompass all occupants of a vehicle, neither has the Ninth Circuit until now. In the past, this Circuit, like others, has only cursorily and inexactly generalized the *Mimms* holding in dictum. *See, e.g., United States v. Wiga*, 662 F.2d 1325, 1332–33 (9th Cir.1981), *cert. denied*, 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982) ("Occupants of a lawfully detained motor vehicle may be routinely ordered out of the vehicle" pursuant to *Mimms* ); *United States v. Shabazz*, 993 F.2d 431, 437 n. 7 (5th Cir.1993) ("Ordering someone to get out of a car is itself a 'seizure,' but a constitutionally permissible one when done incident to a lawful traffic stop" pursuant to the ruling in *Mimms* ); *United States v. Powell*, 929 F.2d 1190, 1195 (7th Cir.) (The occupants of a car lawfully stopped for a traffic violation "may even be asked to leave their vehicles."), *cert. denied*, 502 U.S. 981, 112 S.Ct. 584, 116

L.Ed.2d 609 (1991).[1] Our prior decisions, however, are compatible with the view that an officer may ask passengers as well as drivers to exit vehicles lawfully stopped for routine traffic violations for the limited purpose of ensuring an officer's safety. *See, e.g., United States v. Cannon,* 29 F.3d 472, 476–77 (9th Cir.1994) (An officer can take reasonable protective measures such as ordering the driver to get out of the car as the particular circumstances warrant upon lawfully stopping a vehicle for a traffic violation.); *United States v. Behanna,* 814 F.2d 1318, 1321 (9th Cir.1987) (Although the vehicle was stationary, we held the officer's precautionary action of requesting the occupants to get out of the car was reasonable when the officers found two persons asleep in a vehicle bearing an expired license plate and the person in the passenger seat had a record of concealed weapon charges).

Although "the safety of the officer ... is both legitimate and weighty," *Mimms,* 434 U.S. at 110, 98 S.Ct. at 333, it is unreasonable for an officer to have discretion without limits. I would hold, therefore, that an officer may ask passengers to exit a vehicle if the vehicle has been lawfully stopped for a traffic violation and if the officer's request is legitimate and reasonable for the limited purpose of ensuring the officer's safety under the circumstances. Subjecting an officer's conduct to this minimal test of reasonableness is a minor burden compared to the import of virtually eradicating a passenger's Fourth Amendment right to freedom from "arbitrary interference by law officers." In effect, application of the majority's *per se* rule to passengers unnecessarily does away with the Fourth Amendment rights of persons who may be merely along for the ride, so to speak.

---

1. In addition to relying on the dicta in these cases, the majority also cites to *United States v. Tellez,* 11 F.3d 530 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1630, 128 L.Ed.2d 354 (1994), and *United States v. Hardnett,* 804 F.2d 353 (6th Cir.1986), *cert. denied,* 479 U.S. 1097, 107 S.Ct. 1318, 94 L.Ed.2d 171 (1987). In *Tellez,* however, the court stated "the police can generally order a *suspect* out of a car after a routine traffic stop." 11 F.3d at 533 (emphasis added). In *Hardnett,* the court found that "officers ... may also order occupants out of a car *when they have a particularized suspicion that the occupants are armed.*" 804 F.2d at 358 (emphasis added).