**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 9, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DOMINIC JACQUEZ,

Defendant-Appellant.

No. 06-2026

(D. New Mexico)

(D.C. No. 04-1208 JB)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Chief Judge, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

Dominic Jacquez pleaded guilty to possession with intent to distribute methamphetamine, use of a firearm in connection with a drug trafficking offense, and use of a residence to distribute methamphetamine. The plea agreement provided that Mr. Jacquez could appeal the district court's denial of his motion to suppress evidence the government directly and indirectly derived from the traffic stop that led to his arrest. Mr. Jacquez argued that his detention violated his

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Fourth Amendment right to be free from unreasonable seizures because the deputy who pulled him over had mistakenly concluded he was driving a vehicle registered to an individual for whom there existed an arrest warrant. After a hearing, the district court denied Mr. Jacquez's motion. Because we conclude that the detention was based on the deputy's reasonable suspicion of criminal activity, we conclude that the officer's actions did not violate Mr. Jacquez's Fourth Amendment rights. Taking jurisdiction under 28 U.S.C. § 1291, we affirm the decision of the district court.

## I. BACKGROUND

On April 8, 2004, a confidential informant reported to Deputy Connie Johnston, a member of the San Juan County, Sheriff's Department, that someone had driven a black Cadillac Escalade away from a local residence known to be associated with drug activity. The tipster also provided the deputy with the license plate number of the vehicle. Deputy Johnston's search of a database revealed that the vehicle was registered to an individual named Tommy Largo. Deputy Johnston relayed this information to fellow deputy Brian Dennis. She did not provide Deputy Dennis with Tommy Largo's date of birth or a physical description of him.

Later that day, Deputy Dennis, who had never encountered Tommy Largo and had no identifying information for him, observed the black Escalade parked at a gas station in Farmington, New Mexico. An unidentified male stood near the

vehicle, pumping gas. Deputy Dennis confirmed that the license plate on the vehicle matched the number Deputy Johnston had given him. Then, using a computer in his cruiser, he entered the name Tommy Largo into a database and ascertained that there was an outstanding warrant for the arrest of an individual named Tommy Largo.

Deputy Dennis pulled the Escalade over shortly after it exited the gas station. Unbeknownst to Deputy Dennis, the vehicle had two occupants, neither of whom was Tommy Largo. In fact, Mr. Jacquez was driving the Escalade, and a woman named Veronica Gallegos occupied the passenger seat. Tommy Largo, the registered owner of the vehicle, was an elderly man who had no outstanding warrants for his arrest. The Tommy Largo for whom the warrant was issued was considerably younger than the owner of the vehicle and had no association with the vehicle or its occupants.

After approaching the vehicle, Deputy Dennis asked Mr. Jacquez to produce his driver's license. Mr. Jacquez handed Deputy Dennis an identification card, stating that he had a driver's license but could not find it. Mr. Jacquez also admitted that he did not own the vehicle; he reported that he had borrowed from someone named "Mike" and had only been in possession of it for two hours. He would not, or could not, inform Deputy Dennis of Mike's last name. Three other deputies soon joined Deputy Dennis. Once again using his cruiser's computer, Deputy Dennis learned that Mr. Jacquez's driver's license was suspended and that

there were two warrants for his arrest. After verifying the existence of the warrants, Deputy Dennis informed Mr. Jacquez that he was under arrest and placed him in custody.

After being placed under arrest, Mr. Jacquez was handcuffed and searched. Pursuant to the San Juan County Sheriff's written policy, Deputy Dennis ordered the vehicle to be towed. Policy further required that the officers undertake an inventory search of the vehicle prior to towing. In this case, the inventory search revealed a fanny pack that contained two digital scales, some rolled up plastic bags, 83.5 grams of methamphetamine, and documents bearing Mr. Jacquez's name. The officers also found a handgun beneath the driver's seat. At that time, the deputies placed Mr. Jacquez's companion, Ms. Gallegos, under arrest. After being detained at the Farmington Holding Facility, Mr. Jacquez and Ms. Gallegos were released.

On June 1, 2004, a United States Magistrate Judge authorized a federal criminal complaint against Mr. Jacquez, based on Mr. Jacquez's possession of methamphetamine in April of that year. The next day, New Mexico State Police officers arrested Mr. Jacquez at his sister's home, where he had been residing. Mr. Jacquez consented to a search of the home, where officers found several guns, methamphetamine, plastic baggies, and scales.

Following the search, a federal grand jury charged him with the following: three counts of possession with intent to distribute five (5) grams or more of

methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and one count of maintaining a place for manufacture, distribution, and use of controlled substances, in violation of 21 U.S.C. § 856(a)(1) and (b). Mr. Jacquez and Ms. Gallegos filed a motion to suppress the evidence found in the Escalade as well as all evidence directly or indirectly derived from that search. In support of the motion, the defendants argued that Deputy Dennis lacked reasonable suspicion to stop the vehicle. After conducting an evidentiary hearing, the district court denied the motion. Mr. Jacquez ultimately entered a conditional plea of guilty, reserving the right to appeal the district court's determination that the Deputy Dennis's traffic stop did not violate his Fourth Amendment right to be free from unreasonable seizures.

## II. DISCUSSION

When reviewing a district court's denial of a motion to suppress evidence allegedly obtained in violation of the Fourth Amendment, "we accept the district court's factual findings unless [they are] clearly erroneous," and we view the evidence in the light most favorable to the government. *United States v. Holt*, 264 F.3d 1215, 1228 (10th Cir. 2001). We review the district court's legal conclusions *de novo*. *Id.* In this case, the relevant facts are undisputed. We need only determine whether the district court reached the correct decision as a matter of law.

Traffic stops are seizures under the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." *United States v. Tibbetts*, 396 F.3d 1132, 1136 (10th Cir. 2005) (internal quotation marks omitted). We analyze traffic stops under the principles governing investigative detentions, which the Supreme Court set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* Thus, a traffic stop is valid under the Fourth Amendment if the officer had "a reasonable and articulable suspicion that the person seized [was] engaged in criminal activity." *United States v. Davis*, 94 F.3d 1465, 1468 (10th Cir. 1996) (internal quotation marks omitted). We consider "the totality of the circumstances . . . to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation mark omitted).

Mr. Jacquez's sole claim on appeal is his challenge to the legality of the traffic stop that led to his arrest. He concedes that neither Deputy Dennis nor any of the other officers who passed information along to him were aware that he was in pursuit of the wrong Tommy Largo when he stopped the Escalade. Mr. Jacquez contends, however, that Deputy Dennis's suspicion was not reasonable under the circumstances because "[o]fficers had the capability of obtaining further information from the computers in their units" that would have clarified that the owner of the Escalade was not the subject of an arrest warrant, but officers failed to investigate further prior to stopping his vehicle. Aplt's Br. at 9. The

-6-

government argues that Deputy Dennis's suspicion of Mr. Jacquez, although mistaken in this critical respect, was reasonable when viewed in the totality of the circumstances.

In undertaking our review of the investigative detention at issue, we are mindful that reasonable suspicion, which is required to support an investigative detention, does not amount to probable cause, which is required for an arrest. *See United States v. Shareef*, 100 F.3d 1491, 1505 (10th Cir. 1996). Reasonable suspicion "requires considerably less than proof of wrongdoing by a preponderance of the evidence, but something more than an incohate and unparticularized suspicion or hunch." *Shareef*, 100 F.3d at 1505. We have observed that "[a] mistaken premise can furnish grounds for a[n investigative detention], if the officers do not know that it is mistaken and are reasonable in acting upon it." *Id.* (quoting *United States v. Ornelas-Ledesma*, 16 F.3d 714, 718 (7th Cir. 1994) *judgment vacated on other grounds*, 517 U.S. 690 (1996)). *See also Tibbetts*, 396 F.3d at 1138 ("We have consistently held that an officer's mistake of fact, as distinguished from a mistake of law, may support . . . reasonable suspicion necessary to justify a stop.").

We hold that Deputy Dennis acted reasonably given the information available to him. As noted above, Mr. Jacquez has acknowledged that Deputy Dennis did not know of his mistake when he initiated the stop. At the time he stopped Mr. Jacquez's vehicle, Deputy Dennis had little, if any, reason to suspect

the person driving the car was anyone other than Tommy Largo, the subject of an arrest warrant. Deputy Dennis was also aware that Tommy Largo's vehicle may have just come from a residence known to be associated with drug trafficking.

Even if Mr. Jacquez is correct in asserting that officers could have, with relative ease, done more to discover their mistake prior to the stop, he cannot prevail here, as Deputy Dennis acted reasonably based on the information he had. As the Supreme Court has explained, "what is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable." *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990). Particularly when an officer is reacting to a "swiftly developing situation," we will not engage in "unrealistic second-guessing," *Shareef*, 100 F.3d at 1505 (quoting *United States v. Sharpe*, 470 U.S. 675, 685 (1985)).

In *Shareef*, for example, we held that an investigative detention was reasonable, even though it was based on a dispatcher's erroneous conclusion that there was a warrant for the individual's arrest. 100 F.3d at 1505. The defendant in that case, William D. Smith, was initially stopped for speeding but was detained for an extended period of time because he was mistaken for Karlton Wilbur Smith, who, in addition to a surname, shared a birthday with the defendant and was wanted for weapons charges in another state. *Id.* at 1496-97. There, we rejected the defendant's argument that the officer "behaved unreasonably by

-8-

failing to confirm the physical description of the suspect." *Id.* at 1505. Similarly, in *United States v. Lang*, we found a detention based on mistaken identity to be reasonable, even though the officer was in possession of a physical description of the suspect and the defendant and suspect did not have similar appearances. 81 F.3d 955, 966 (10th Cir. 1996). We held the officer's actions to be reasonable, notwithstanding his mistake, because he had only a limited opportunity to view the defendant prior to the investigative detention. *Id.*

In *United States v. Tellez*, the Fifth Circuit held that a mistaken detention was nonetheless reasonable under circumstances similar to those before us. 11 F.3d 530 (5th Cir. 1993). In that case, an officer received information that a parole violator, with whom the officer was familiar, was driving a "black 4 X 4 pickup truck with large tires and a chrome roll bar with attached lights." *Id.* at 531. The description did not include a license plate number. *Id.* Some thirty minutes later, the officer spotted a truck matching the description. The driver was not the known parole violator, but there were also unidentified passengers in the truck, and the officer could not see them. *Id.* As it turned out, the parole violator was not in the truck, but Mr. Tellez, a convicted felon in possession of several firearms, was. *Id.* In holding that the stop was nonetheless reasonable, the court emphasized that "[t]he police need not have every identifying characteristic of a wanted vehicle in make a valid *Terry* stop." *Id.* at 532.

In sum, suspicion need not be supported by completely accurate

assumptions or a full investigation in order to amount to "something more than an incohate and unparticularized suspicion or hunch." *Shareef*, 100 F.3d at 1505. Here, Deputy Dennis had more than a hunch when he stopped Mr. Jacquez. Even if he could have done more to gather information, we are satisfied that he acted reasonably under the circumstances.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.

Entered for the Court,

Robert H. Henry
Chief Circuit Judge