**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-1521

_____

UNITED STATES OF AMERICA

v.

CHRISTIAN BURRUS,
                              Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 2-19-cr-00284-001)
District Judge: Honorable Nora B. Fischer

_____

Submitted Under Third Circuit L.A.R. 34.1(a):
September 22, 2020

_____

Before: AMBRO, PORTER, and ROTH,
*Circuit Judges*.

(Filed: February 16, 2021)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PORTER, *Circuit Judge*.

Christian Burrus conditionally pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Burrus moved to suppress the firearm, but the District Court denied his motion. It concluded that the officer who conducted the search and discovered the weapon had reasonable suspicion of criminal activity sufficient to justify a warrant check on Burrus. On appeal, Burrus challenges the District Court's reasonable-suspicion determination. Finding no error, we will affirm.

**I**

On July 23, 2018, Officer Hess of the Penn Hills Police Department was on a routine traffic patrol in a high-crime area of Penn Hills, Pennsylvania. He checked the license plate number of a blue Nissan Maxima using the National Crime Information Center ("NCIC") database. The results revealed that the vehicle's registration was expired and that the vehicle's owner, Daquela Donald, had an expired driver's license. Officer Hess followed the vehicle and shortly thereafter pulled the vehicle over.

The vehicle had three occupants: a female driver, a male in the front passenger seat, and a female passenger in a rear seat. Officer Hess asked Donald, who was driving, if she had identification, and she responded that she did not. She also could not produce the car's registration, any identification card, or an insurance certificate. Officer Hess asked if anyone in the car had identification and heard no answer. He then took the names of the passengers. The male passenger told Officer Hess that his name was Christian Burrus and provided his date of birth. The female passenger told the officer that her name

was Tomieka Maddox. Donald told Officer Hess that someone would come pick up the vehicle. Officer Hess thanked Donald for her honesty and returned to his police cruiser.

Officer Hess recognized Burrus upon approaching the vehicle because he recalled that a wanted poster with his name and photograph was posted in the police station assembly room over a year earlier, indicating that a warrant for Burrus's arrest was pending at one time. The officer remembered that narcotics detectives were involved in posting the photograph and believed that Burrus had been wanted for a firearm or narcotics charge. In addition, Officer Hess noticed that Burrus appeared very nervous, was sweating profusely, and would not make eye contact with him. Indeed, the officer testified that he had never encountered a passenger as nervous as Burrus during a traffic stop.[1]

Once back inside his vehicle, Officer Hess ran an NCIC check on Burrus, which revealed that he had a suspended driver's license and an active warrant for his arrest for a probation violation. After a backup unit arrived, Officer Hess called dispatch and confirmed that the warrant was active. The process of running the NCIC check on Burrus and confirming that the warrant was active took less than three minutes.

Officer Hess then arrested Burrus. He walked to the passenger side window and asked Burrus if he had any weapons on him. Burrus did not reply. Officer Hess then asked Burrus to step out of the vehicle. After Burrus complied, the officer placed

---

[1] The District Court credited Officer Hess's testimony that he remembered a wanted poster with Burrus's name and photograph and that Burrus appeared very nervous during the stop. After careful review of the record, we defer to the District Court's decision to credit the officer's testimony and accept as true the facts it found.

handcuffs on him and conducted a pat down search, which revealed a firearm in Burrus's waistband. Officer Hess's subsequent investigation revealed that the firearm was stolen and that because Burrus had a prior conviction for manufacture, delivery or possession with intent to deliver a controlled substance, he was not permitted to possess a firearm.

Burrus was charged with being a felon in possession of a firearm. He filed a motion to suppress the firearm as the product of an unreasonable search and seizure, which the District Court denied on two independent grounds. First, it took the position that an officer's taking the time to conduct a brief warrant check on a passenger during a traffic stop does not constitute a deviation from the traffic stop's mission—for which reasonable suspicion would be needed—because a warrant check helps ensure the officer's safety during the stop. Thus, Officer Hess could lawfully perform a warrant check on Burrus even though that check caused the stop to take more time than it otherwise would have. In the alternative, the court concluded that even if Officer Hess did deviate from the mission of the traffic stop, he had reasonable suspicion to perform the warrant check on Burrus in light of the totality of the circumstances. After the District Court denied Burrus's suppression motion, Burrus entered a conditional guilty plea. This timely appeal followed.[2]

## II

We review the denial of a motion to suppress under a mixed standard of review. *United States v. Green*, 897 F.3d 173, 178 (3d Cir. 2018). The District Court's factual

---

[2] The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

findings are reviewed for clear error, and its legal determinations are reviewed de novo. *Id.* We may affirm on any basis supported by the record. *Id.*

The parties dispute whether the July 2018 traffic stop, which was "lawful at its inception," was unreasonably extended in violation of the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). "An unreasonable extension occurs when an officer, without reasonable suspicion, diverts from a stop's traffic-based purpose to investigate other crimes." *Green*, 897 F.3d at 179. The Supreme Court explained in *Rodriguez v. United States* that a traffic stop's purpose is "to address the traffic violation that warranted the stop and attend to related safety concerns." 575 U.S. 348, 354 (2015) (citation omitted). "[T]asks ordinarily . . . tied to the mission of a traffic stop . . . include: 'checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.'" *United States v. Garner*, 961 F.3d 264, 271 (3d Cir. 2020) (quoting *Rodriguez*, 575 U.S. at 355). An officer "may conduct certain unrelated checks during an otherwise lawful traffic stop," but "may not do so in a way that prolongs the stop" absent reasonable suspicion. *Rodriguez*, 575 U.S. at 355. We call the time at which a stop is measurably extended—"when tasks tied to the traffic stop are completed or reasonably should have been completed"—the "'*Rodriguez* moment.'" *Garner*, 961 F.3d at 270. If an officer measurably extends a stop, we must "assess whether the facts available to [the officer] at [the *Rodriguez* moment] were sufficient to establish reasonable suspicion" of criminal activity to determine whether the extension violated the Fourth Amendment. *Green*, 897 F.3d at 179.

Applying this legal framework, the District Court concluded that the warrant check was permissible because conducting a warrant check on a passenger is a "negligibly burdensome precaution[]" to protect the officer rather than a deviation from the mission of the stop. App. 16 (quoting *Rodriguez*, 575 U.S. at 356). The court also found that even if the warrant check did prolong the traffic stop, Officer Hess had reasonable suspicion that warranted doing so.

We assume without deciding that the warrant check on Burrus measurably extended the traffic stop. Having done so, we conclude that Officer Hess's conduct did not contravene the Fourth Amendment because reasonable suspicion justified the warrant check.

To expand the scope of a traffic stop beyond its initial purpose, an officer must have "a reasonable, articulable suspicion of criminal activity." *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003). Reasonable suspicion "is more than 'a mere hunch . . . [but] considerably less than . . . a preponderance of the evidence, and obviously less than . . . probable cause.'" *Green*, 897 F.3d at 183 (alterations in original) (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)). It must be evaluated under the totality of the circumstances and "cannot be defeated by a so-called 'divide-and-conquer' analysis, whereby each arguably suspicious factor is viewed in isolation and plausible, innocent explanations are offered for each." *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). We have also "recognize[d] the particular ability of law enforcement officers, based on training and experience, to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."

6

*Id.* (internal quotation marks omitted). "Reasonable suspicion depends on both the 'information possessed by police and its degree of reliability.'" *Garner*, 961 F.3d at 271 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).

With these principles in mind, we have no difficulty concluding that reasonable suspicion was present at the earliest *Rodriguez* moment: when Officer Hess returned to his vehicle to conduct the warrant check on Burrus. The officer recalled that Burrus had previously had an active warrant in Penn Hills for a firearms or narcotics charge, and did not specifically recall whether the warrant had been cleared by an arrest. This supports the reasonableness of his decision to perform a quick warrant check—even if that check measurably extended the stop. As the Supreme Court has stated, "where police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice." *United States v. Hensley*, 469 U.S. 221, 229 (1985). And "though a criminal record, much less an arrest record, is not sufficient to establish reasonable suspicion, it is a valid factor." *Green*, 897 F.3d at 187. By the same token, Burrus's being wanted for arrest about a year before the traffic stop is germane to whether the officer had reasonable suspicion. Accordingly, we may consider an officer's knowledge of an outstanding warrant within our reasonable-suspicion analysis. *See United States v. Tellez*, 11 F.3d 530, 532–33 (5th Cir. 1993) (holding that a police officer had reasonable suspicion justifying a brief investigatory stop based on the officer's knowledge of an outstanding warrant for the defendant's arrest).

7

Other facts also support the District Court's finding of reasonable suspicion. Officer Hess observed that Burrus was sweating heavily and would not make eye contact with him. Indeed, Officer Hess had never seen a passenger as nervous as Burrus during a traffic stop. "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Burrus also could not produce identification and was in a car being driven by an unlicensed driver. Finally, the traffic stop occurred in a high-crime area of Penn Hills.

We do not conclude that any of these facts, standing alone, would rise to the level of reasonable suspicion. But, considering the totality of the facts presented here, we uphold the District Court's reasonable-suspicion finding.

\*   \*   \*

For the foregoing reasons, we will affirm the District Court's judgment.