**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0700n.06
Filed: September 27, 2006

No. 05-5088

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JOSHUA HUBBARD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| WILBUR GROSS, Individually and in his | ) | EASTERN DISTRICT OF KENTUCKY |
| official capacity as a Police Officer and | ) | |
| employee of the City of Cynthiana and its | ) | |
| Police Department, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| TERRY GRAY, Individually and in his | ) | |
| official capacity as a Police Officer and | ) | |
| employee of the City of Cynthiana and its | ) | |
| Police Department, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| CITY OF CYNTHIANA, a 4th class | ) | |
| municipal corporation organized under the | ) | |
| laws of the Commonwealth of Kentucky, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| CYNTHIANA POLICE DEPARTMENT, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

1

**Before:  MOORE, ROGERS, and McKEAGUE Circuit Judges.**

**ROGERS, Circuit Judge.**  In this § 1983 action there is no question that Hubbard was injured by the police, but he does not present evidence that warrants civil redress.  After being arrested for driving under the influence, the officers broke Hubbard's hand in a forceful takedown.  That being said, the district court properly dismissed Hubbard's various claims because he presented no evidence to meet the elements of those offenses.  The municipal liability claim is barred as a matter of law because the jury found that Hubbard's civil rights were not violated.  The various wrongful use of process claims fail because Hubbard does not present evidence that the assault charges were brought with improper purpose or without probable cause.  The "outrage" claims fail because there was no outrageous conduct or intent to cause emotional distress.  The district court's evidentiary decisions were not an abuse of discretion.  Thus, the court affirms the district court on all issues.

**I.**

**BACKGROUND**

At 2:00 a.m. on May 8, 2002, Cynthiana police Officer Terry Gray responded to a call about a sedan being driven recklessly on the interstate.  According to the 911 call, the driver was "lucky if he didn't kill himself."  The sedan in question had nearly collided with a parked car.  Suspecting that the driver of the sedan was impaired, Officer Gray pulled the recklessly driven car over.  Though the driver did not have his license, he identified himself as Joshua Hubbard and provided his social

security number. Officer Gray suspected Hubbard was drunk. Officer Gray smelled alcohol on Hubbard's breath and saw an open bottle of Jim Beam bourbon on the passenger side of Hubbard's vehicle. Hubbard claims that, though the bottle was half full, he did not drink from it on the night of his arrest.

Gray administered, and Hubbard failed, three field sobriety tests. Gray administered, and Hubbard failed, a breathalyzer test. According to the breathalyzer, Hubbard's blood alcohol level was at least twice the legal limit. Gray arrested Hubbard.

Gray then transported Hubbard to Harrison Memorial Hospital for a blood test. By the time Gray was ready to transport Hubbard to the hospital, Officer Wilbur Gross arrived on the scene and followed Gray to the hospital. After unsuccessfully attempting to contact an attorney, Hubbard refused to consent to a blood test. Gray and Gross then prepared to take Hubbard to the police substation for processing. Gray and Gross escorted Hubbard in handcuffs to the cruiser, but according to Hubbard he passively resisted and needed to be carried. According to Gray and Gross, Hubbard resisted violently. Pushing, kicking, bleeding, swelling, swearing, and a broken hand ensued.

Hubbard claims that he was assaulted by the officers for passively resisting. The officers claim Hubbard assaulted them and that they used the minimum level of force necessary to subdue Hubbard. A jury found that the force used was reasonable. A bone in Hubbard's hand was broken

after Gray and Gross "body slammed" Hubbard and sprayed him with OC spray (an eye irritant). Hubbard developed swelling and bleeding in his hand and wrists.

Gray and Gross contend that Hubbard pushed Officer Gray, attempted to kick the officers as they tried to subdue him, flailed his arms, and head butted Gray (i.e., reared his head back and struck Officer Gray's face with his forehead). Gray later developed a knot on his cheek from the alleged head butt. Hubbard claims that he did not head butt anyone, and that Gross never witnessed Hubbard head butt Gray. Hubbard claims that neither officer actually knew how Gray was injured (i.e., that Gray and Gross fabricated the head butt story). The issue of excessive force was submitted to a jury. A jury returned a verdict in favor of the officers—finding that the force used was reasonable.

There is no dispute that Hubbard got roughed up during the takedown, but there is a dispute as to whether Hubbard requested medical attention or was obviously injured. Pictures and testimony show that Hubbard had some swelling around his wrists from the cuffs, and significant swelling in his right hand (which, unknown to the officers, was broken). Hubbard claims the officers taunted him as he requested medical care. Gray and Gross claim that he did not ask for medical assistance and that witnesses corroborate this.

Although Gray and Gross claim they did not know the hand injury was serious, the Cynthiana jailer would not admit Hubbard without getting treatment for his hand because the jailer felt Hubbard had a "possible broken hand." Because the jailer would not admit Hubbard until he got treatment

for his hand, Gray and Gross took Hubbard to the hospital two hours after the initial injury. At the hospital the hand was splinted, but Hubbard did not receive pain medication.

After the scuffle outside the hospital, Hubbard was brought to the police substation. While at the police substation, Hubbard was recorded on video swearing profusely and goading officer Gross to fight. After ten minutes of screaming and swearing, Hubbard got up and walked toward a counter separating Hubbard from Gross. The video reveals that Officer Gross told Hubbard to "sit down and be quiet." Hubbard did not sit down and responded, "Come on Wilbur [Gross], you gonna' make me." This video also included mentions of Hubbard's prior arrests. At the second civil trial for excessive force (the first ended in a hung jury), the district court permitted the jury to see the whole substation video despite the prejudice from mentions of Hubbard's previous arrests and unsavory language; the court ruled that the tape was probative of Hubbard's drunk and abusive state.

Hubbard was criminally charged with driving under the influence, driving without a driver's license in his possession, possession of an open container of alcohol in a motor vehicle, and assault on a police officer. Hubbard pled guilty to a DUI, and all the charges but the assault were dropped. A grand jury found that probable cause existed as to the assault. The assault charge went to trial, and Hubbard was found not guilty.

*The underlying litigation*

Hubbard filed a civil action against Gray and Gross in their individual capacities alleging the following torts: excessive force under the 4th Amendment, deliberate indifference to a serious

medical need under the 8th and 14th Amendments, federal and state malicious prosecution, state abuse of process, and federal and state "outrage." Hubbard filed suit against the City of Cynthiana alleging that a city custom or policy was the driving force behind the alleged constitutional violations and thus the city was liable under § 1983. After discovery, the defendants filed a summary judgment motion. As relevant to this appeal, the district court granted summary judgment for the defendants for the following claims: municipal § 1983 liability, federal and state malicious prosecution, state law abuse of process, and federal and state "outrage." The district court permitted the "deliberate indifference" to a serious medical need and excessive force claims to go to trial.

After Hubbard presented his evidence in the first trial, the district court granted a directed verdict on the claim for "deliberate indifference" to a serious medical need, reasoning that Hubbard did not present evidence that a two-hour delay is unreasonable under the circumstances and that Hubbard did not present verifying medical evidence that the delay caused injury. The first trial resulted in a hung jury. At a second trial on December 13, 2005, the excessive force claim was submitted to a jury. The district court struck Hubbard's "police practices" expert witness and permitted the jury to view all of a police substation video. The jury rendered a verdict for the officers – finding that the force used was reasonable.

## II.

## STANDARD OF REVIEW

For the various claims dismissed under summary judgment or on directed verdict, this court reviews de novo. The court views all evidence in the light most favorable to Hubbard to determine if a material issue of fact remains. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The evidentiary rulings are reviewed under an abuse of discretion standard. *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993). An abuse of discretion exists where the reviewing court is firmly convinced a mistake has been made. *United States v. Kingsley*, 241 F.3d 828, 835 n.12 (6th Cir. 2001).

**III.**

**A. Deliberate indifference to a serious medical need.**

The district court properly directed a verdict for the officers on Hubbard's claim that the officers acted with deliberate indifference to a serious medical need because Hubbard did not present evidence that the two-hour delay in receiving treatment was unreasonable. Hubbard presented evidence that his injuries were obvious and that he actually experienced the need for medical treatment. However, he needed also to present evidence that the need was not addressed in a reasonable time frame. Because, considering the circumstances, no jury could conclude that a two-hour delay is an unreasonable time frame to obtain a splint for a broken hand, the district court properly directed a verdict in favor of the defendants.

Hubbard had the right to receive "adequate" medical care because he was a pretrial detainee. *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). A constitutional claim for inadequate

medical care has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the existence of a "sufficiently serious" medical need. *Id.* The subjective component requires an plaintiff to show that officials have "a sufficiently culpable state of mind in denying medical care," which is normally defined as "deliberate indifference." *Id.* Deliberate indifference "entails something more than mere negligence," and requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 835, 837.

*1. Subjective Factor: Hubbard's evidence supports a finding that the officers exhibited deliberate indifference.*

The evidence presented supports a finding that the officers knew Hubbard was injured and in pain and that they did not seek medical care. The officers argue that, even if the injury was serious, they were not deliberately indifferent because they could not have known Hubbard was injured. A review of the evidence submitted at trial shows that a jury could conclude that the officers knew Hubbard was injured. Thus, there was sufficient evidence to support a finding that the officers were deliberately indifferent.

The evidence presented is sufficient to support a finding that the officers should have known the injury was serious and required medical attention. The officers claim that they did not know Hubbard was seriously injured. In addition to their own testimony, the officers argue that the testimony of Dr. McEldowney (Hubbard's treating physician) would require a jury to find that the

officers could not have known Hubbard was seriously injured. Dr. McEldowney did testify that a layperson might not know that Hubbard's hand was broken even though it was very swollen. Hubbard presents other evidence that directly contradicts Dr. McEldowney's testimony and creates a triable issue of fact. County Jailer Smith's testimony suggests that a layperson would know that Hubbard possibly had a broken hand that required medical care. Smith is not a doctor, but based on cursory investigation Jailer Smith would not admit Hubbard because Smith felt Hubbard had a "possible broken hand." Mr. Smith testified that he did not admit Hubbard because his injury was "bad enough that it might require medical attention." Additionally, Hubbard testified that he asked for medical care numerous times and complained of extreme pain and swelling in his hand and wrists. Thus, there is sufficient evidence to support a finding that a layperson, such as the officers, were aware of facts from which they could have known that Hubbard was seriously injured.

Thus, there is a material issue of fact with respect to the subjective component.

*2. Objective Factor: the two-hour delay was not an unreasonable delay in providing treatment for Hubbard's broken hand.*

Despite the obviousness of the injury, the district court correctly entered a directed verdict because the facts presented do not rise to the level of a serious injury not addressed in a reasonable time.

Hubbard's evidence does not show that his broken hand was so serious that a two-hour delay in receiving a splint is unreasonable. Hubbard contends that the officers should have brought him

to the hospital more quickly. Hubbard must present evidence that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Although, Hubbard's broken and swollen hand was "so obvious that even a layperson would easily recognize the necessity for a doctor's attention," *Blackmore v. Kalamazoo County*, 390 F.3d 890, 894, 899-900 (6th Cir. 2004) (internal quotations omitted),[1] Hubbard did not demonstrate that his "need was not addressed within a reasonable time frame." *Id.* Hubbard cannot satisfy the objective prong of the deliberate indifference analysis.

Hubbard's claim for deliberate indifference to a medical need fails.

## B. State abuse of process claim

Abuse of process is the use of process for some ulterior purpose. Hubbard's abuse of process claim fails because the officers brought charges against Hubbard without any ulterior purpose.

Abuse of process differs from malicious prosecution in that malicious prosecution consists of commencing an action maliciously or without justification. Abuse of process, however, consists of "the employment of legal process for some other purpose other than that which it was intended by the law to effect." *Raine v. Drasin,* 621 S.W.2d 895, 902 (Ky. 1981). A Kentucky abuse of process claim requires: (1) an ulterior purpose, and (2) a willful act that uses the process improperly.

---

[1]As Hubbard contends, it is true that *Napier v. Madison County*, 238 F.3d 739, 743 (6th Cir. 2001), does not require Hubbard to present verifying medical evidence of the detriment suffered by the delay in treatment, because the evidence in this case shows Hubbard's broken, swollen, and bleeding hand was an obvious injury. *See Blackmore*, 390 F.3d at 899-900.

*Simpson v. Leytart*, 962 S.W.2d 392, 394 (Ky. 1998*)*; *see also* Prosser and Keeton on Torts §121 (5th ed. 1984) (stating "if the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe he is guilty, it is malicious prosecution; if he prosecutes him with such grounds to extort payment of a debt, it is abuse of process"). Hubbard's claim fails because there was no ulterior purpose as contemplated by *Simpson*, 962 S.W.2d at 394.

Hubbard does not articulate what ulterior purpose was served by the prosecution. An ulterior purpose is defined generally to be some illegitimate purpose beyond merely bad intent. *Id.* (stating "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intention."). Hubbard does not articulate any reason why the officers initiated the charge of assaulting a police officer for a reason other than to convict him of that charge. Hubbard seems to argue that fabricating testimony is an improper willful act and attempting to convict someone who is innocent is a non-legitimate use of the process.

Attempting to convict someone who is innocent is not an "ulterior purpose" as needed to state an abuse of process claim. In *Mullins v. Richards,* 705 S.W.2d 951, 951-52 (Ky. Ct. App. 1986), customers of an automobile repair shop contested the quality and cost of the repairs and refused to pay for the repairs. After hearing testimony of the disgruntled customers, the grand jury returned indictments against the shop owner for theft by deception. A mistrial in the criminal action against the shop owner was declared after the court heard testimony of only one witness, one of the disgruntled customers. The shop owner thereupon brought an action for abuse of process against the customers. In affirming the trial court's dismissal of the shop owner's abuse of process claim

by a directed verdict, the Kentucky Court of Appeals noted the fatal absence of the crucial element of the shop owner's abuse of process case by stating that "the record contains no evidence that appellees attempted to use the indictments against appellant outside the criminal proceeding." *Id.* at 952. Hubbard's abuse of process claim similarly fails because there was no ulterior purpose.

## C. State Malicious Prosecution Claim

Because there was probable cause to believe Hubbard assaulted a police officer, Hubbard's malicious prosecution claim also fails. Hubbard contests the district court's assertion that "there is no significantly probative evidence that he was maliciously prosecuted." Because Hubbard has not shown all the elements sufficient to reach a jury, the district court correctly granted summary judgment for the officers.

The malicious prosecution tort compensates for harm caused by the misuse of legal process. The tort action requires the following elements: (1) the institution or continuation of original judicial proceedings, including criminal proceedings, (2) by, or at the instance, of the defendant, (3) the termination of such proceedings in plaintiff's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) damages. *See Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981). A jury could conclude that elements 1-3 are clearly met because Officer Gross filed a criminal complaint against Hubbard, and the criminal trial ended in acquittal. Element four, malice, is a jury question and may be inferred from a lack of probable cause. *See Sweeney v. Howard*, 447 S.W.2d 865, 865 (Ky. App. 1969). Thus, the question in this case is

whether there was probable cause as a matter of law. Even taking the evidence in the light most favorable to Hubbard, there was probable cause because an officer could reasonably infer that a crime occurred.

The facts put forth reveal simple confusion about what happened, but Gray and Gross had sufficient reason to believe Hubbard assaulted Officer Gray to constitute probable cause. Hubbard was tried for assault in the third degree. "A person is guilty of assault in the third degree when the actor . . . intentionally causes or attempts to cause physical injury to . . . a police officer." Ky. Rev. Stat. Ann. § 508.025. Probable cause requires only concrete facts from which one can reasonably infer that a crime occurred. *McCurdy v. Montgomery County*, 240 F.3d 512, 517 (6th Cir. 2001). The "concrete facts" from which the officers reasonably concluded that Hubbard committed an assault include the following: Hubbard, who was intoxicated, passively resisted the officers' attempts to subdue him and place him in a police car; a scuffle between Officer Gray and Hubbard ensued during the process of placing Hubbard in the police car; during that scuffle Officer Gray suffered a trauma to his face which was sufficiently forceful to cause substantial swelling and redness. It is not exactly clear how Officer Gray received the injury. Officer Gray said, "my head hit the back of [Hubbard's] head." Officer Gross, though not entirely consistent in his testimony, believed Hubbard intentionally head butted Gray. Hubbard denies intentionally head butting anyone. Despite the confusion, the undisputed facts show that an officer was injured in a takedown and that injury appeared to be from a head-to-face contact by an arrestee who was trying to make restraint difficult. These facts constitute probable cause to arrest for assault.

- 13 -

Hubbard argues, but does not sufficiently show, that the officers initiated the assault prosecution without probable cause. It is undisputed that Officer Gray suffered a trauma to his face during the takedown. In effect, Hubbard argues that Officers Gray and Gross fabricated a story that Hubbard head butted Gray when, in fact, they had no idea how Gray got the bump. Hubbard's evidence for this assertion is a conversation between Gray and Gross in the police substation where Officer Gross asked Gray how he hurt his eye. Hubbard contends that such an inquiry by Gross is inconsistent with his testimony before the grand jury that he saw the head butt. Hubbard suggests that if Gross witnessed the assault, he would not have had to ask Gray how he hurt his eye.

Hubbard misconstrues the conversation at the police substation because the conversation by itself does not support a contention that Gross lied. The video at the police substation to which Hubbard refers is almost completely inaudible. Hubbard contends Gray stated, "my eye is sore." Then Gross asked what happened. Gray responded, "my head hit the back of his head." Officer Gross responded, "I thought I saw him head butt you." This conversation does not create a material issue of fact as to whether there was a lack of probable cause. It does reveal that Gross may not have been completely certain of what he saw.

Because there was probable cause, Hubbard's malicious prosecution claim fails.

**D. Federal Malicious Prosecution Claim**

The officers are entitled to qualified immunity because there was probable cause to prosecute Hubbard for assault. Thus, Hubbard's federal malicious prosecution claim fails.

The threshold question for § 1983 actions is, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under the analysis above, the facts are sufficient to constitute probable cause to arrest and indict Hubbard for third degree assault. Thus, there was no constitutional violation and qualified immunity on the federal malicious prosecution claim was proper.

**E.  Outrageous Conduct Claim**

*Federal Claim*

There is no constitutional tort for "outrageous conduct." A substantive due process claim may lie for conduct that "shocks the conscience," but the officers' conduct neither "shocks the conscience" nor is "the most egregious official conduct." Therefore, Hubbard's federal substantive due process claim for outrageous conduct fails.

Hubbard argues that *Chavez v. Martinez*, 538 U.S. 760 (2003), recognized a constitutional tort for behavior that is "outrageous." *Chavez* states:

> The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law." Convictions based on evidence obtained by methods that are "so brutal and so offensive to human dignity" that they "shoc[k] the conscience" violate the Due Process Clause. *Rochin v. California*, 342 U.S. 165, 172 (1952) (overturning conviction based on evidence obtained by involuntary stomach pumping). Although *Rochin* did not establish a civil remedy for abusive police behavior, we recognized in *County of Sacramento v. Lewis*, 523 U.S.

833, 846 (1998), that deprivations of liberty caused by "the most egregious official conduct" may violate the Due Process Clause.

*Chavez*, 538 U.S. at 774 (citations omitted).  Contrary to Hubbard's claim, *Chavez* is merely a reiteration of the "shocks the conscience" standard from *Rochin v. California*.  Body slamming a suspect and cuffing him in a way that breaks his hand–while subduing him without unreasonable force–does not shock the conscience and is not "the most egregious official conduct."  Neither is allegedly fabricating a head butt to bolster an assault charge where there are reasonable assertions that the suspect did cause serious injury to an officer during a takedown.

*State Claim*

In Kentucky there is a tort for "outrage," or intentional infliction of emotional distress.  This tort has the following elements:

(1) the wrongdoer's conduct must be intentional or reckless;

(2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;

(3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and

(4) the emotional distress must be severe.

*Burgess v. Taylor*, 44 S.W.3d 806, 811 (Ky. Ct. App. 2001).  Hubbard's outrage claims fails because the officers' conduct was not outrageous, there is no evidence of intent to cause emotional distress, and Hubbard did not suffer severe emotional distress.  Hubbard presents insufficient evidence that

- 16 -

the officers' statements or actions were outrageous or intended to inflict emotional distress. Furthermore, Hubbard presents no evidence that he suffered emotional distress from the officers' actions. *See id.* at 812 (stating that severe emotional distress consisted of panic attacks, depression uncured by medication or therapy, and thoughts of suicide requiring medical care after knowing that plaintiff's "babies were dead"). Thus, Hubbard's outrage claim fails as a matter of law because he did not present evidence of severe emotional distress or sufficiently outrageous conduct.

**F. Municipal Liability: because a jury determined that no officer-defendant had deprived Hubbard of any constitutional right, he cannot state a claim against the City.**

Summary judgment on the municipal policy or custom claim[2] was appropriate because there was not sufficient evidence that an officer committed a constitutional tort against Hubbard. The district court dismissed the claim against the city on the ground that there was no evidence that a municipal policy or custom was the driving force behind the alleged deprivation. While the district court's analysis is correct, this court does not need to consider Hubbard's evidence on municipal liability. The "conclusion that no officer-defendant had deprived the plaintiff of any constitutional right *a fortiori* defeats the claim against the County as well." *Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000); *see also Bukowski v. City of Toledo*, 326 F.3d 702, 712-13 (6th Cir. 2003). Absent a violation of Hubbard's constitutional rights by a municipal employee, Hubbard cannot state

---

[2]Hubbard names various government agencies (i.e., City of Cynthiana, Officers Gray and Gross in their official capacities, and the Cynthiana Police Department). All these named parties are treated as one entity ("the city") pursuant to *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

a claim against the municipality. Thus, the district court properly granted summary judgment on the municipal liability claim.

**G. The district court did not abuse its discretion by excluding the expert testimony of Hubbard's "police practices" expert.**

Finally, the district court did not abuse its discretion in not permitting the testimony of Dr. Cox on the ground that Cox's testimony was unnecessary and consisted of legal conclusions.

Dr. Cox does have relevant credentials including: being a professor of criminology, studying and publishing in criminal justice, serving as an elected sheriff, developing training manuals, conducting seminars on police management, and testifying in other civil trials.

Dr. Cox sought to opine on what is a reasonable use of force, and that issue is within the competence of a lay jury. The district court reasoned that the proffered testimony was "unnecessary" and "would consist of legal conclusions." Unnecessary expert testimony may be excluded. *See Salem v. Unites States Lines Co.*, 370 U.S. 31, 35 (1962) (stating, "expert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them" (internal quotations omitted)). Because testimony about whether the officers used reasonable force is a legal conclusion and may confuse the trier of fact, the district court is within its sound discretion to exclude it. *See, e.g., Pena v. Leombruni*, 200 F.3d 1031, 1034 (7th Cir. 1999)

(holding that a jury is not assisted by expert testimony on what level of force is appropriate under the circumstances). If the jury believed that Hubbard was being violent, the jury did not need expert opinion to determine whether it was reasonable to spray, cuff and restrain Hubbard.

Thus, the district court did not abuse its discretion in not permitting the testimony of Dr. Cox on the ground that Cox's testimony might confuse the jury and had little chance of assisting the trier of fact.

**H.  Admission of the entire police substation video was not an abuse of discretion.**

Hubbard objects to the district court's decision to allow the jury to see a video taken of Hubbard at the substation after his arrest. In this video Hubbard is seen cursing and being abusive. The video also contains mention that Officer Gross knew of Hubbard's previous arrests in the context of phone privileges afforded to Hubbard during his previous arrests. The decision to admit the whole substation video is reviewed for abuse of discretion. *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "This court takes a maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect, and will hold that the district court erred only if the latter outweighs the former." *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir.

1999). While it is true that the video prejudiced Hubbard, admitting the video was not an abuse of discretion because the video also had significant probative value.

The unfair prejudicial effects were slight. As a general matter, evidence of unrelated criminal activity or bad acts tends to give impermissible impression to a jury that a particular defendant has a "bad" or "criminal" character. *See* Fed. R. Evid. 404(b). In this case, the officers did not imply that Hubbard had a criminal propensity. The unfair prejudice was slight because the mentions of Hubbard's arrest were brief, barely audible, and the officers never mentioned that Hubbard had been arrested in closing arguments or anywhere else in the trial.

The probative value was substantial. The officers sought to introduce the video to show Hubbard's demeanor after the arrest, to show that he was drunk, to show that he was combative, and to show that Hubbard was not in pain. The video was direct evidence of exactly what Hubbard and the officers did at a significant point in the sequence of events.

Indeed, the Ninth Circuit has recognized that evidence of police knowledge of prior criminal history may be relevant in excessive force cases. *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995), held that officers could testify to their knowledge (at the time the allegedly excessive force was applied) of Ruvalcaba's previous arrests because such information was probative of the reasonableness of their conduct under the circumstances. *Ruvalcaba* stands for the point of law that officers can introduce evidence of previous encounters with a detainee if previous encounters would be relevant to show how much force is reasonable in a subsequent arrest. The

*Ruvalcaba* court held that the probative value was not substantially outweighed by the danger of unfair prejudice. *Id.* Applying the Ninth Circuit's reasoning in *Ruvalcaba*, evidence that Gross either arrested Hubbard before or processed Hubbard after he was arrested is independently probative of the reasonableness of Officer Gross's use of force in the instant case. Unlike *Ruvalcaba*, where the only probative value of the evidence related to reasonableness of force, in the instant case the video is also relevant to show that Hubbard was rowdy and drunk. Thus, the video of Hubbard is more probative than the evidence presented in *Ruvalcaba*, and the probative value substantially outweighed the unfair prejudicial effects.

In sum, unfair prejudice was very limited, and the probative effect was substantial. The district court did not abuse its discretion when ruling "that the probative value outweighed the prejudicial effects."

**IV.**

This court therefore affirms the district court in all respects.