NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0053n.06

No. 13-1247

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| STEVEN SCOZZARI as Personal Representative of the Estate of WILLIAM CHRISTI SCOZZARI, Deceased, | ) ) ) ) | |
| Plaintiff-Appellee, | ) ) | **FILED**<br>Jan 15, 2015<br>DEBORAH S. HUNT, Clerk |
| v. | ) ) | |
| CITY OF CLARE, KEN HIBL, a municipal agent of City of Clare, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Defendants, | ) ) ) | |
| and | ) ) | |
| CHIEF DWAYNE MIEDZIANOWSKI, as Agent for the municipal corporation and as an individual, OFFICER JEREMY MCGRAW, as an agent of the municipal corporation and as an individual, jointly and severally, | ) ) ) ) ) ) | |
| Defendants-Appellants. | ) ) | |

BEFORE: BOGGS, BATCHELDER, and WHITE, Circuit Judges.

HELENE N. WHITE, Circuit Judge. City of Clare Police Chief Dwayne Miedzianowski and Officer Jeremy McGraw appeal the district court's denial of their post-trial renewed motion for judgment as a matter of law on Plaintiff's[1] Fourteenth Amendment claim of deliberate

---

[1] Plaintiff Steven Scozzari is the brother of decedent William Scozzari. We refer to decedent William Scozzari as "Scozzari" and to Steven Scozzari as "Plaintiff."

1

indifference to serious medical needs, asserting that the district court erred in denying their qualified-immunity defense.  We disagree and AFFIRM.

## I.  FACTS AND PROCEDURAL HISTORY

Trial testimony established that at 11:06 p.m. on September 18, 2007, a resident of the Lone Pine Motel called the Clare Police Department and reported that shots had been fired at a park near the motel.  Chief Miedzianowski was dispatched to the scene at 11:06 p.m. and arrived at 11:12 p.m.  Miedzianowski observed a man, later identified as William Scozzari, walking from the nearby VFW Hall carrying a flashlight and a cane.  Miedzianowski testified that after Scozzari shined his flashlight in the direction of the police cruiser, Miedzianowski asked him to stop; Scozzari responded with an expletive and continued walking.  Miedzianowski followed Scozzari to Cabin 17 of the Lone Pine Motel.  Officer McGraw arrived at 11:21 p.m., after Scozzari entered Cabin 17.  PID 2638-39, 3997.

The two Officers approached Cabin 17, knocked on the door, and announced "Police. Open Up."  Scozzari eventually opened the door and appeared to be clutching a knife and hatchet.  McGraw fired a taser when Scozzari took a step forward, but missed Scozzari.  Scozzari stepped back inside his cabin, the Officers kicked the door, and Scozzari opened the door, holding a hatchet and knife.  The Officers screamed "Drop your weapons," Scozzari moved toward McGraw, and Miedzianowski opened fire.  The two Officers fired eleven shots, five of which hit Scozzari.

At 11:26 p.m., Miedzianowski reported shots fired and a suspect down.  A Mobile Medical Response unit (MMR) was dispatched to the scene at 11:27 p.m.  At 11:29 p.m., Miedzianowski instructs the dispatcher to call the MMR and have them stage at Pettit Park.  The exact time the paramedics arrived at the park is not clear.  At 11:34:50 p.m., Miedzianowski

2

radioed dispatch to send in the ambulance. Paramedic Bryans reached Scozzari and began treating him sometime after 11:35 p.m., but was interrupted while police searched Scozzari for weapons. The length of the interruption is unknown, but at 11:37 p.m., MMR was treating Scozzari and at 11:57 p.m. MMR was en route to the hospital.

This case was previously before this court on Defendants' interlocutory appeal of the district court's pretrial denial of qualified immunity; a panel of this court affirmed. *Scozzari v. Miedzianowski*, 454 F. App'x 455 (6th Cir. 2012) (*Scozzari I*). The case proceeded to trial on Plaintiff's Fourth Amendment excessive-force claim and Fourteenth Amendment claim of denial of timely medical treatment. Over Plaintiff's objection, the district court instructed the jury that Plaintiff had to prove that Defendants' deliberate indifference proximately caused his death. The jury returned a verdict of no cause of action on both claims.

Plaintiff moved for a new trial. The district court granted the motion, limited to the denial-of-medical-treatment claim, on the ground that the proximate-cause jury instruction did not comport with the law of this circuit and prejudiced Plaintiff's case.[2]

Defendants moved for relief from the order granting a new trial, Fed. R. Civ. P. 60(b), and renewed their motion for judgment as a matter of law on Plaintiff's medical-treatment claim, Fed. R. Civ. P. 50(b), asserting that the jury was properly instructed on proximate cause and that, even if the instruction was erroneous, they were entitled to judgment as a matter of law because there was insufficient evidence for a jury to find that Defendants were deliberately indifferent to Scozzari's medical needs. Defendants also argued they were entitled to qualified immunity because the evidence submitted at trial could not support a finding of the deprivation of a clearly

---

[2] The district court noted that the prejudice to Plaintiff's case resulting from the erroneous instruction was evident from Plaintiff's closing argument, "The judge has decided and you now know from the instructions yesterday, that with regard to our failure to provide medical treatment claim, we would have to prove that that failure substantially caused Mr. Scozzari's death. We can't prove that." PID 3017.

3

established constitutional right. PID 2158. The district court denied Defendants' motion, affirmed its ruling that the jury instruction was erroneous, and denied Defendants qualified immunity. PID 3148.[3] Defendants appealed and the district court stayed proceedings pending our disposition.

## II. STANDARD OF REVIEW

Invocation of qualified immunity raises a question of law that we review de novo. *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996). Government officials may invoke qualified immunity as a defense only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine if qualified immunity protects a government official from suit, courts engage in a two-step inquiry: 1) whether the defendant violated a constitutional right, and (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should

---

[3] The district court explained:

> It is undisputed that Scozzari's medical need was serious. He was shot five times and lay in a pool of blood. It goes without saying that Scozzari badly needed medical attention. A layperson would know that someone lying in a pool of blood after being shot needs medical treatment immediately in order to avoid death. And the Officers "do not dispute that they were aware that Scozzari had been shot." Scozzari's obvious condition satisfies the objective requirement of the failure to provide timely medical treatment test. Further it is clear that the Officers were well-aware that Scozzari's condition was serious.

> The more complicated question is whether the Officers disregarded the substantial risk of serious harm to Scozzari's health . . . . Viewed in the light most favorable to Plaintiff, there is sufficient evidence to satisfy a reasonable jury that the Officers did not respond reasonably to Scozzari's needs.

PID 3160.

4

be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see also Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010).

We review de novo the district court's denial of Defendants' renewed motion for judgment as a matter of law under Rule 50(b). *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012) (citing *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir.2007)). "The motion may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Id*. (internal quotation marks omitted). Judgment as a matter of law becomes appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1).

## III.  ANALYSIS

### A.  Jurisdiction

Because Defendants accept the facts in the light most favorable to Plaintiff and raise only issues of law, this court has jurisdiction under 28 U.S.C. § 1291. *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014).

### B.  Deliberate Indifference

Defendants contend that the evidence at trial was insufficient as a matter of law to establish that they were deliberately indifferent to Scozzari's serious medical need, and that their Fourteenth Amendment obligation was only to promptly summon medical care for Scozzari.

The Due Process Clause of the Fourteenth Amendment requires government officials to provide adequate medical care to individuals injured while being apprehended by police. *Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he due process rights of a [pre-trial detainee]

5

are at least as great as the Eighth Amendment protections available to a convicted prisoner."); *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008). To establish a violation of the right to adequate medical care under 42 U.S.C. § 1983, a plaintiff must show that the defendant acted with "deliberate indifference to serious medical needs." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001) (quoting *Estelle v. Gamble*, 492 U.S. 97, 104 (1976)). A plaintiff need not show that the official acted "for the very purpose of causing harm or with knowledge that harm will result." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1970)); *see also Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) ("Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain."). "[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836.

"Deliberate indifference is not mere negligence. Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [a plaintiff's] health and safety." *Phillips*, 534 F.3d at 539. A claim for deliberate indifference to serious medical needs has both objective and subjective components. *Id.* The objective component requires proof of a sufficiently serious medical need. *Farmer*, 511 U.S. at 834; *Phillips*, 534 F.3d at 539. To establish the subjective component, a plaintiff must "allege facts which, if true, would show that the official . . . subjectively perceived facts from which to infer substantial risk to the [individual], that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 837).[4] However, a plaintiff need not

---

[4] Our dissenting colleague faults us for not applying a "shocks the conscience" standard as derived from *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998), and as applied by this court in *Hunt v. Sycamore Community School District Board of Education*, 542 F.3d 529, 535–36 (6th Cir. 2008). But "conscience shocking" as an inquiry posed in *Lewis* is not self-defining; rather, it is to be addressed in context, 523 U.S. at 850, as the dissent recognizes.

prove that the official acted "for the very purpose of causing harm or with knowledge that harm will result" if the official recklessly disregarded a known risk. *Id.* (quoting *Farmer*, 511 U.S. at 835).

Where a deliberate-indifference claim is based on delay of medical care, a constitutional violation arises if the injury in question is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention," and the resulting need for treatment was "not addressed within a reasonable time frame." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899–900 (6th Cir. 2004).

Defendants contend that Plaintiff presented no evidence to indicate that they subjectively knew that additional weapons were in Scozzari's pockets and consciously chose not to retrieve the weapons before the paramedics began attending to Scozzari. Defendants cite *Williams v. City of Grosse Pointe Park*, No. 03-73596, 2005 WL 2173686 (E.D. Mich., Sep. 6, 2005), *aff'd*, 496 F.3d 482 (6th Cir. 2007), to support their argument that since they summoned EMS within minutes of the shooting, there is no evidence of deliberate indifference. However, *Williams* is distinguishable because there were no intervening delays before medical aid was provided. There, the plaintiff was injured when one of the defendant officers fired shots at the stolen vehicle the plaintiff was driving while fleeing police. Once the officer realized that the plaintiff had been shot, he reported "shots fired," summoned EMS, and said to the plaintiff "EMS is coming . . . just keep breathing man," "you doing ok," and "keep breathing, stay with me." In addition, other officers arrived on the scene and attended to the plaintiff's medical needs and an

When the facts are viewed in a light most favorable to Scozzari, each of the three inquiries in *Lewis* can be seen as favoring Scozzari: Scozzari had no voluntary relationship with the government; and Defendants had enough time to bring neighbors of Scozzari's out of their homes to view Scozzari lying on the ground with weapons in hand, which they did without having searched Scozzari for weapons or secured the area in preparation for medical personnel.

7

ambulance arrived within seven minutes. Thus, in *Williams* the defendants were not deliberately indifferent to the plaintiff's medical needs. *Id.* at *2-3, 8.

We acknowledge that this is a closer case than some, and we recognize the problems faced by police officers confronted with the necessity of attempting to meet conflicting objectives such as securing the scene and summoning EMS, *see Pierce v. Springfield Twp.*, 564 F. App'x 431 (6th Cir. 2014). However, in this case, a reasonable jury could find that the alleged conflicting objectives were carried out in a way that would not meet the standard for qualified immunity. The district court correctly concluded that the jury could have found Defendants were deliberately indifferent when they failed to search Scozzari for weapons between 11:26:09, when Miedzianowski called in that shots were fired, and 11:34, when Miedzianowski instructed dispatch to send in the ambulance that was staged nearby. PID 3638-41. And even when the paramedics began treating Scozzari, they were called off for a time after a Michigan State Police Trooper asked if Scozzari had been searched for weapons. PID 4227.

Further, a jury could conclude that Defendants disregarded the substantial risk of harm to Scozzari by engaging in activity unrelated to securing the area in preparation for medical personnel to enter. Instead of securing the area and searching Scozzari for weapons, McGraw brought neighbors out of their homes to view the fallen Scozzari with weapons in his hand. One witness also testified to seeing an officer enter Scozzari's cabin and retrieve items, which the officer then placed near Scozzari. A jury could conclude that, in the face of such a serious medical need, Defendants were deliberately indifferent by delaying Scozzari's access to medical treatment for non-medical reasons unrelated to securing the scene.

8

## C. Qualified Immunity

Defendants assert they did not violate a clearly established right and are therefore entitled to qualified immunity, contending that testimony at trial established that it is standard protocol for emergency responders to stage off-site until given the all-clear from police to enter the scene, and that paramedic Winnie Bryans testified she would have staged off-site even if Miedzianowski had not directed her to do so. However this court has already addressed the issue:

> Defendants argue that, even if their behavior amounted to deliberate indifference, they are entitled to qualified immunity because it was not clearly established when this incident occurred that failing to give medical responders immediate access to an injured detainee violates the Fourteenth Amendment. However, a constitutional right need not be expressly recognized to be clearly established. To the contrary, "'general statements of the law' are capable of giving clear and fair warning to officers even where 'the very action in question has [not] previously been held unlawful.'" *Smith,* 430 F.3d at 776–77 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (alteration in *Smith*). *See also Anderson*, 483 U.S. at 640 [] ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) ("[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." (citing *Hope v. Pelzer*, 536 U.S. 730, 740–41 (2002)). Reasonable officers would have known, based on this Circuit's precedent, that the obligation to provide adequate medical care to an injured detainee is not discharged merely by promptly calling for assistance, but extends to ensuring that medical responders are able to access the victim without unreasonable delay.

*Scozzari I*, 454 F. App'x at 467.

## IV. CONCLUSION

For these reasons, we AFFIRM.

9

**ALICE M. BATCHELDER, Circuit Judge, dissenting.** Defendants appeal the district court's denial of their qualified immunity defense as asserted in their renewed motion for judgment as a matter of law, and we must determine whether they are entitled to qualified immunity, and therefore to judgment. *See Ortiz v. Jordan*, 131 S. Ct. 884, 888–89, 892 (2011) (holding that a defendant may not appeal an order denying summary judgment on qualified immunity grounds after a full trial on the merits, but a defendant may appeal the denial of a renewed motion for judgment as a matter of law on qualified immunity grounds). To determine if a defendant is entitled to qualified immunity, we ask whether the facts alleged and the evidence produced, when viewed in a light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right and (2) the right was clearly established. *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). Because it is not clearly established that "engaging in activities that [are] unrelated to securing the area for medical personnel" is tantamount to deliberate indifference, as the majority opinion suggests, I must dissent here.

For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Although a pretrial detainee's constitutional right to adequate medical care is clearly established, *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008), a pretrial detainee does not have a clearly established constitutional right to medical care that is administered without any delay. Rather, we have defined "adequate medical care," in this context, as care that that has not been *unreasonably* delayed. *See Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 539–43 (6th Cir. 2008); *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 601–03 (6th Cir.

10

2005); *Comstock v. McCrary*, 273 F.3d 693, 703, 706 (6th Cir. 2001); *see also Hubbard v. Gross*, 199 F. App'x 433, 437–38 (6th Cir. 2006).

In this case, to determine whether Defendants unreasonably delayed Scozzari's medical care, we ultimately must decide whether Defendants' actions were arbitrary. *See Hunt*, 542 F.3d at 535–36.[1]  Because the majority opinion does not address arbitrariness, it is necessary to outline it thoroughly here. Although arbitrariness may seem to be a broad concept, in this context arbitrary conduct is only that which "shocks the conscience"; and "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another. . . ." *Id.* at 535. "[W]hen executive action is worse than negligent but was not done for the purpose of injuring someone or in furtherance of invidious discrimination," we should consider:  (1) the voluntariness of the relationship between the government and the injured person, (2) whether the government actor was required to act quickly or had time for deliberation, and (3) whether the government actor pursued a legitimate governmental purpose. *Id.* at 536.[2]

---

[1] "Since the time of our early explanations of due process, we have understood the core of the concept to be protection against arbitrary action. . . .We have emphasized time and again that '[t]he touchstone of due process is protection of the individual against arbitrary action of government,' whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective. . . . Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense . . . .'" *Hunt*, 542 F.3d at 535 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (citations omitted)).

[2] Unfortunately, the majority opinion in footnote 4 misapplies *Hunt*'s three-factor analysis, and applies a reasonableness test found in *Comstock v. McCrary*, 273 F.3d 693, 703, 706 (6th Cir. 2001), in which this court stated that a defendant will prevail against a claim of deliberate indifference if he, instead of recklessly disregarding the risk, "reasonably responded to the risk, even if the harm was ultimately not averted." (internal quotation marks omitted).  Although this statement is correct and supports the analysis in *Hunt*, it does not clearly articulate how we should determine whether a defendant's response to a known risk is "reasonable."  Indeed, it appears that *Hunt* expanded *Comstock*'s analysis to clarify the test for "reasonableness" in a situation like the one currently before us. *See Hunt*, 542 F.3d at 541–42 ("*Farmer v. Brennan*, 511 U.S. 825, 837 (1994), defines deliberate indifference in terms of 'excessive risk,' indicating that the need for the risk is being balanced against countervailing considerations.  Thus, even where the governmental actor is subjectively aware of a substantial risk of serious harm, we will be unlikely to find deliberate indifference if his action was motivated by a countervailing, legitimate governmental purpose." (citations omitted)).  Thus, the analysis in *Hunt*, not that in *Comstock*, is the proper analysis to apply here.

11

Our analysis of the latter two factors in *Hunt*, 542 F.3d at 539–43, is instructive.  Relying on *County of Sacramento v. Lewis*, 523 U.S. 833, 851–54 (1998), we held that "conduct that might offend . . . may still not be considered arbitrary if it was undertaken for a legitimate governmental purpose in a crisis requiring immediate response." *Hunt*, 542 F.3d at 540. Government officials face a higher standard if they have time to deliberate their course of action, instead of being forced to act instantaneously. *Id.* at 539.  But if they are reacting to an emergency, any indifference on their part generally is not conscience-shocking due to the importance of competing obligations and the necessity of giving deference to decisions made in haste. *Id.* at 540.

Moreover, if a government official's actions arise out of his "attempt to discharge duties which [he] is required by law or public necessity to undertake," his actions generally cannot be considered arbitrary, even if the official "was imprudent in choosing one legitimate goal over another." *Id.*  For example, in *Ewolski v. City of Brunswick*, 287 F.3d 492, 513–16 (6th Cir. 2002), we held that police were not deliberately indifferent when they chose to intervene aggressively in a hostage-taking crisis, rather than choosing to continue their stand-off, even though the choice resulted in the death of one of the hostages.  Even if the police "made a bad choice, [their] action . . . did not shock the conscience" because they faced competing legitimate objectives. *Hunt*, 287 F.3d at 541.  This analysis is consistent with *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), which defined deliberate indifference as "excessive risk," thus indicating that the risk taken must be balanced against countervailing considerations. *See id.*  "For [us] to find deliberate indifference, therefore, [we] must find not only that the governmental actor chose to act (or failed to act) despite a subjective awareness of substantial risk of serious injury, but . . . also . . . that he did not act in furtherance of a countervailing governmental purpose that justified

12

taking that risk." *Id.* And a countervailing governmental purpose is generally (1) any legitimate police duty or (2) any act that, if not performed, could expose a governmental actor to liability. *See id.* at 542–43.

Here, Defendants were forced to act quickly to perform countervailing governmental purposes. Their police duties required that they do several distinct things: (1) seek medical care for Scozzari, (2) secure the scene, and (3) gather witness testimony.[3] Numerous witnesses testified that, immediately following the shooting, Officer Miedzianowski radioed for help, saying that shots were fired and the suspect was down. Paramedic Winnie Bryans and Clare County Deputy Kyle Kehn testified that Officer Miedzianowski's instruction to stage emergency responders until the scene was secure was standard procedure. And this record, viewed in a light most favorable to Plaintiff, clearly shows that MMR was staged for no longer than two minutes. While Defendants waited for MMR to arrive, they gathered witness impressions and attempted to secure the scene by taking the weapons from Scozzari's hands and handcuffing him. According to the record, both actions were taken and completed in less than nine minutes[4]; and during seven

---

[3] Police officers generally must gather witness testimony to submit accurate police reports. *See Austin v. City of Montgomery*, 353 F. App'x 188, 189 (11th Cir. 2009) ("The unnamed police officer who responded to the scene . . . failed to interview witnesses or file a written report . . . as required by Alabama Code § 32-10-7."); *United States v. Gauvin*, 173 F.3d 798, 803 (10th Cir. 1999) (Officer testified "that, in making his reports at the scene . . ., he interviews witnesses."); *Weimer v. Schraeder*, 952 F.2d 336, 340 n.6 (10th Cir. 1991) ("[T]he police officers at the accident scene had a duty to prepare an accurate accident report including interviews with available witnesses."). Furthermore, if Defendants had not gathered witness testimony in this case – confirming that Scozzari attempted to attack them with weapons – they still might be subject to liability under Plaintiff's "excessive force" claim, which alleged that Defendants were in no immediate danger when they shot Scozzari and that they actually attempted to justify their use of force by planting weapons on Scozzari's body.

[4] Dispatch was called at 11:27 p.m., and MMR was "at patient" at 11:35 p.m. Even if we choose to discount the MMR report, which recorded the "at patient" time, the CAD Incident Report recorded that MMR was sent in at 11:34:50 p.m. Accepting Officer McGraw's testimony that Officer Miedzianowski waited one minute before calling dispatch, less than nine minutes transpired between when Scozzari was shot and when MMR was at his side assisting him. Moreover, whether we choose to rely on the MMR report "at scene" time of 11:33 p.m. or the CAD Incident Report "ENTR TO STAGE" time of 11:32:23 p.m., the record clearly shows that MMR was staged for no longer than two minutes.

13

to eight of those minutes, MMR was traveling to the scene, parking the ambulance, unloading their equipment, and walking 75 to 200 feet to Scozzari.

To the extent that the majority opinion suggests that these actions were not performed quickly enough or that Defendants failed to adequately secure the scene, which resulted in delays, such delays cannot amount to recklessness, but at most, only negligence. *See S.L. ex rel. K.L. v. Pierce Twnp. Bd. of Trustees*, 509 F. App'x 536, 539 (6th Cir. 2013) ("Recklessness is a perverse disregard of a known risk."); *Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 747 (6th Cir. 2008) ("[N]egligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm."). Furthermore, although the majority opinion suggests that Defendants should not have gathered witness testimony, that action cannot be considered "conscience-shocking" because Defendants faced countervailing governmental purposes[5] that justified their actions and the risk those actions imposed on Scozzari's health and safety. *See Hunt*, 542 F.3d at 541–43.

Thus, although "general statements of law are capable of giving clear and fair warning to officers," *Smith v. Cupp*, 430 F.3d 766, 776–77 (6th Cir. 2005), the applicable general statements of law here, particularly those found in *Hunt*, did not give Defendants clear and fair warning that their actions related to their police duties would be tantamount to deliberate indifference. Even though we have not held specifically that gathering witness testimony is a countervailing governmental purpose as defined in *Hunt* ("competing legitimate governmental purpose"), there is no language in *Hunt* or its progeny that suggests that such action is *not* a countervailing

---

[5]In this Court's prior decision in this case, *Scozzari v. Miedzianowski*, 454 F. App'x 455, 463, 466 (6th Cir. 2012), the majority concluded, based on the evidence available before trial, that a reasonable jury could find that Defendants used excessive force if the evidence at trial revealed that Scozzari did not threaten Defendants with weapons and instead Defendants planted weapons on Scozzari's body to cover up their use of force. However, due to the evidence revealed at trial—the evidence that Defendants gathered while waiting for MMR to arrive—a reasonable jury could not find that Defendants used excessive force. Because Defendants' actions therefore were necessary to avoid exposure to liability, Defendants "act[ed] in furtherance of . . . countervailing governmental purpose[s]." *See Hunt*, 542 F.3d at 541.

14

governmental purpose; therefore, it is not clearly established that such action always amounts to deliberate indifference. Moreover, based on the application of *Hunt* to this case, as outlined above, I conclude that Defendants did not violate Scozzari's due process right to adequate medical care because Defendants were not deliberately indifferent toward Scozzari's medical condition.

Because neither criterion necessary to defeat qualified immunity has been satisfied here, Defendants are entitled to qualified immunity, and the district court erred by denying this defense and granting a new trial. I would therefore reverse the judgment of the district court and grant Defendants' renewed motion for judgment as a matter of law.

I respectfully dissent.